[Civ. No. 16747.   Second Dist., Div. Two.   Mar. 21, 1949.]

R. J. NIX, Plaintiff and Appellant, v. ROGER G. HEALD et al., Respondents; COMMUNITY BUILDING COMPANY (a Corporation), Cross-defendant and Appellant.

724

Walker, Meyers, Ingram & Moser and Alfred R. Meyers for Appellants.

Vern E. Garten for Respondents.

MOORE, P. J.—Plaintiff was denied damages for an alleged breach of contract while defendants were awarded damages for plaintiff's violation of the same contract. Plaintiff and his assignor, the cross-defendant, appeal.

Community Building Company, a corporation, sometimes referred to herein as builder, was at the time of executing the contract engaged in constructing and selling single residence homes in Los Angeles. Respondents were then subcontracting plumbers. On July 7, 1945, the builder and the plumbers executed a writing whereby the latter agreed to do all the necessary plumbing in 100 homes to be constructed by the builder.

Under the terms of the contract the builder was obliged to notify the plumbers to commence delivery "approximately August 1, 1945." Instead, it did not give them notice until September 5, 1945, whereupon respondents immediately began to install the plumbing. Such delay of 35 days was serious. It caused respondents to lose their war-time priorities for plumbing supplies and equipment, necessitating their resort to the open market in an effort to obtain the required materials greatly in demand and scarce in quantity. The unavoidable results were respondents' delay in the installation of the plumbing, and their inability to comply with their agreement "to supply material and install same at rate of one house per day." Although tardy, respondents completed the installation of the plumbing in 45 houses and were paid in full therefor. Having asserted that respondents were in default under the contract, in October, 1945, the builder

employed another plumber to complete the plumbing sub-contract. At no time did respondents refuse to carry out their contract prior to the builder's employment of the other concern. On September 4, 1946, the builder assigned its contract to appellant Nix who sued to recover as damages the excess of the amount paid the new plumber for completing the installation over the price to have been paid under the contract. Respondents filed a general denial and their cross-complaint.

The theory of appellant's action was that respondents' performance was not a substantial compliance with the contract in that they had failed to complete the plumbing at the rate of one house per day. Therefore, they contended, they were justified in terminating the contract, in employing another plumber, and in recovering damages in the amount suffered by reason of the employment of the new subcontractor. The theory of respondents' answer was that if they were behind their prescribed schedule, the delay was occasioned by the builder's tardiness in notifying respondents to commence operations; the builder could not take advantage of its own delinquency to declare the contract at an end. By their cross-complaint respondents alleged and thereafter contended that since the builder could not invoke the termination clause of the contract, it was not warranted in employing another plumber, thereby depriving respondents of anticipated profits.

The trial court submitted 11 special interrogatories to the jury for answer, and of these, number 7 and the answer thereto are alone sufficient to sustain both judgments.

"(7) If defendants were behind schedule on either of the said dates [September 21 or October 18, 1945], was their delay proximately caused by failure of Community Building Company to commence work or to make it possible for defendants to commence work on or about August 1, 1945, with resultant loss of frozen plumbing materials? Answer *Yes*."

Inasmuch as respondents' delay was in turn caused by the builder's delay, the latter was in no position to declare a forfeiture of respondents' rights to fulfill the contract. It follows that since the builder's hiring of another plumber was in derogation of respondents' contractual rights, Community Building Company was properly held to answer for damages proximately caused thereby.

Appellants contend that the jury's answers to other special interrogatories demonstrate that respondents' judgment on their cross-complaint rests only upon an alleged oral modification of the written contract. Not so. Admittedly the jury

found that the contract had been modified in that the builder waived the right to terminate the contract for any and all delays of respondents in consideration of respondents' doing additional work. But the same judgment could have been entered even if the jury had found that there was no oral modification. Assuming as appellants contend that there was no waiver of the covenant permitting the builder to procure other plumbers if respondents were too slow, still the builder would have been in no position to invoke that provision because the jury found that the delay which would have permitted its invocation was caused by the building company. Thus, the builder could not say, "We are terminating this contract because you are not complying" for the good reason that the builder itself was the cause of respondents' noncompliance.

Appellants contend that respondents by commencing work under the contract waived any default of the builder caused by its tardy notification to commence performance. Admitting such contention, arguendo, yet respondents' waiver of one default did not concede to appellants the right subsequently to breach the contract by hiring another plumber. Nor would respondents' waiver of the builder's first default preclude respondents' action against the builder for a subsequent breach of the contract. Also, appellants contend that respondents' allegedly belated commencement of installing the plumbing was a breach of a mere independent covenant. This is not sustained by a fair construction of the issues. Neither respondents' defense to the original action nor their contentions on the cross-complaint were predicated on the builder's initial delay. Both were founded on the builder's breach of the contract by hiring another plumber to complete the project.

Appellants contend that respondents should not have been permitted to recover on their cross-complaint because there was no showing that the plumbers were able to complete their contract. To buttress this argument appellants cite the testimony of Jerome Heald to the effect that respondents did not have the materials wherewith to finish the remaining 55 houses. But by the contract respondents guaranteed the availability of materials for only the first 45 houses. It does not follow that because respondents did not have materials on hand they were unable to complete their contract. They could as in the construction of the first 45 houses resort to the open market, such as it was in 1945, to procure their supplies.

Appellants next contend that the court improperly permitted the jury to interpret the terms of the contract by submitting special interrogatories 1 and 12 and by giving instructions pertinent thereto.

## SPECIAL INTERROGATORY 1 AND THE ANSWER

■ ·''Referring to the contract phrase 'Subcontractor guarantees he has all the materials available for forty-five (45) houses at this time,' did the parties intend (A) this language to mean that defendants then had in their possession all plumbing materials for 45 houses, or (B) did they intend it to mean that defendants were then in position, by use of priorities furnished by Community Building Company, to obtain such materials immediately? Answer *(B) Yes.*''

At the trial President Diller of the Community Building Company testified without objection that the builder promised to give respondents what priorities the builder had and that he ''furnished them the priorities on the first 45 houses.'' Mr. Jerome Heald testified to the same fact. Mr. Diller's subsequent testimony that the parties had agreed that no priorities would be necessary was obviously rejected by the jury.

The question submitted by interrogatory 1 and answered by the jury was a harmless procedure in view of the uncontradicted testimony that appellants promised to, and did, give respondents priorities for materials on the first 45 houses. Such amusement or exaltation as the jury may have enjoyed in considering what was meant by the phrase quoted in interrogatory 1 neither adds to nor subtracts from the meaning of the phrase, since its meaning as conceived could add nothing to the proof that the builder gave respondents all priorities necessary for the acquisition of the materials on the first 45 houses. While it was error for the court to submit the task of interpreting any part of the contract to the jury, no prejudice resulted by reason of two facts, viz., (1) an interpretation was unnecessary in the light of Mr. Diller's testimony and (2) in entering the judgment the trial court either adopted the jury's view or acted upon the proof that the builder had promised to furnish respondents with the priorities for the essential materials. In either event the court committed no prejudicial error since it did not in fact rely upon the advice of the jury for a construction of the contract. The fact that the judgment reflects the same view as that expressed by the jury in its answer cannot be deemed to be conclusive that the court regarded itself as bound by the answer. The judg-

ment was the determination of the court and we must consider it to be the result of the court's conclusion without regard to the result of the jury's deliberation. Furthermore, in answer to interrogatory 6, the jury determined that no delay was proximately caused by the builder's failure to furnish priorities. That answer completely repudiated respondents' contention that the delays in installing the plumbing were caused by builder's failure to furnish priorities. The same answer cured the error committed in submitting interrogatory 1. Moreover, the issue under consideration by the court and jury did not involve the construction of the 45 houses as to which respondents' guaranty of availability of materials had been given by the contract. On the contrary, the issue at stake pertained only to the remaining 55 houses, as to which no guaranty was given.

### INTERROGATORY 12 AND THE ANSWER

"Did the defendants by their telegram of September 25, 1945, Exhibit 3, or their letter of October 2, 1945, Exhibit 5, or their letter of October 23, 1945, Exhibit 7, or in any other manner, refuse to complete their contract at any time before Community Building Company relet the plumbing contract to State Plumbing Company on or about October 29, 1945? Answer No."

A fair construction of the documents mentioned can lead to no conclusion other than that they do not constitute such refusal. Respondents in their telegram to builder, September 25, 1945, said, "We are unable to complete our contract as per schedule. If you so wish we are agreeable to terminate our contract with you with the understanding that neither party will claim damages. If you agree to this termination we will complete all houses on which we have started to install plumbing." The letter by respondents' attorney dated October 2, 1945, said in substance: the notification to have been given by you August 1, 1945, was in fact made by you on September 5, 1945, and the plumbers began to install plumbing September 6 and proceeded with diligence as to the 45 houses, and as to them we are in a position to and will perform to the best of our ability. But by reason of your delay in giving notice, conditions had so changed that delays beyond our control were occasioned. Any attempts of the builder to get other plumbers will be resisted. Respondents' letter of November 23, 1945, said, "as a matter of compromise

and settlement only, we make the following offer: "That we perform the balance of the 55 houses at $525 each.'"

Nothing in all or in any of these communications can be fairly construed as a refusal to complete the contract as alleged and contended by appellants. Of course, the court should not have submitted them to the jury for a finding of their significance. Their interpretation was a judicial function and their meaning should have been determined by the court and presented to the jury as a matter of law. Whether the court adopted the jury's construction or interpreted the documents independently of the jury's answer to interrogatory 12, it correctly determined their meaning as a basis for the decree. If appellants were dissatisfied with the judgment they owed it to the court to present their grievance by motion for a new trial. Although the task of interpreting the documents was one of judicial cognizance it must be presumed that at the time of ordering judgment to be entered on the verdict the court decided that by the three communications there was no refusal to complete the contract. Since appellant contends that the interpretation of respondents' three communications is strictly a matter of law, we adopt its thesis and now hold as the trial court determined and impliedly held in entering the judgment, that respondents at no time refused to complete the contract.

Appellants contend that testimony pertaining to respondents' damages was hearsay and therefore improperly admitted. The trial court conceded that the evidence was hearsay, but for the purpose of expediting the trial admitted it subject to verification by respondents' books. Such verification was made the same day and appellants' counsel after an examination of the books stated, "I have no further questions with respect to the books." The confusion and apparent contradictions in the witness' testimony were the result of questioning by appellants' counsel and were promptly eradicated by subsequent questions propounded by the court.

Appellants also object to respondents' testimony concerning matters of which, they maintain, the court should have taken judicial notice. ■ But a refusal to take such notice merely places upon a proponent the burden of proving the fact which he has asked the court to accept without proof. The record discloses that the court expressly limited the testimony to what was then the custom in the plumbing business and did not permit the witness to testify as to what was the law in respect to priorities.

Appellants' final assignment is concerning the instructions given. It is first contended that they were too long and confusing. This contention is utterly without merit. ██ Time consumed in instructing a jury is immaterial if the court's charge is clear, the issues are fairly discussed and the law is correctly applied. While the jury did call the court's attention to an obvious error in interrogatory 4 and to discrepancies in interrogatories 10 and 11, the court removed all confusion arising therefrom by correcting 4, eliminating 10 and amending 11. While the instructions were somewhat involved they were as simple as the complicated issues would allow. The trial developed many contingencies for the jury's consideration. Of necessity they had to be instructed, and they were instructed, upon each of them in as concise a manner as the composite factual situation would permit. The résumé given by the trial court demonstrates that the court patiently and painstakingly presented to the jury a clear picture of the issues developed and the possible solutions thereto. Not a prejudicial utterance is to be found in the lengthy charge.

It is contended that 14 specified instructions contain erroneous propositions of law. The contrary is true as will appear from the following comments upon them considered in their order as presented by appellant. (1.) Those cited under (1.) pertain to the resolution of ambiguities found in the contract and are elementary. ██ (2 and 3.) These were explanations of the significance of the contemporaneous collateral agreement and of the conflicting testimony concerning priorities. Appellants were in no way prejudiced by them if erroneous, because the jury by their answer to special interrogatory 6 found in appellants' favor on the points involved. (4.) This instruction explained the significance of defendants' two alternative positions. The answers to interrogatories 2, 3 and 4 were also in appellants' favor in respect to instruction 4. Therefore, the latter could not have been prejudicial. (5.) This instruction merely submitted to the jury the question whether the delay of respondents came within the terms of the contract relating to "causes beyond the control of the subcontractors"—a question proper for jury determination. (6.) This instruction told the jury the consequences which would necessarily follow if they believed the testimony of either of two witnesses contradicting each other. Although the testimony related to the question whether there had been a parol modification of a written instrument, the determination of that question was unnecessary to a verdict

in favor of respondents, in view of the "yes" answer given to special interrogatory seven. If the answer had been "no," then a determination of the question of oral modification would have become a prerequisite to a proper disposition of the case. (7.) This instruction involves the construction of the contract clause quoted in instruction (5.) *supra*. ▪ (8.) The criticism of this instruction is that it contains an "inference" prejudicial to appellants. The implication referred to arises from that portion of the instruction concerning the letters of respondents mentioned in interrogatory 12 *supra,* which advises the jury "that plaintiff was not obligated to accept any new offer from the defendants provided the defendants were in default at the time." Appellants contend that the quoted portion of the instruction implies that appellants *would be* obligated to accept a new offer if the plumbers were not in default. Such contention would be unwarranted even if the quoted sentence only be considered. But, conceding the asserted implication, the court eradicated it by the following: "If they [the plumbers] were not behind . . . then there would be no justification for such notices" which were the subject of the instruction. (9.) Two of the instructions here complained of as confusing elucidate contingencies which the jury had to consider and thus viewed are lucid, clear and intelligible. In effect they advised the jury what conclusion they must derive upon finding which of two factual situations was true. The language employed is carefully chosen to enable the jury to comprehend the complicated issues. Appellants in the same connection complain of the instruction with reference to respondents' protracted delay. By the statements made the court in substance told the jury that *the delay in carrying out the contract constitutes no defense* if (a) the defendants have *represented to the builder at the time of the contract that they had all the materials on hand or* (b) *if the contract required them to have the materials for the job on hand.* Such language is not only free from error but was favorable to appellants. ▪ (10.) This is the orthodox instruction on proximate cause and applies to actions ex contractu as well as ex delicto. The fact that it is more frequently employed in actions sounding in tort rather than in contract does not impair its propriety in the latter. ▪ (11.) This is the customary instruction with reference to the failure of a litigant to produce stronger evidence than that which he has offered. Appellants complain of it on the ground that "it does not appear that there was any stronger

evidence than that produced by either party." If so, it prejudiced neither party. ▮▮▮ (12.) This instruction was that if the builder prevented respondents' performance, such performance was excused. This is an elemental proposition of law, pertinent and harmless. ▮▮▮ (13.) Appellants criticize the court's reference to "contract or contracts" in this instruction. In the course of the trial there was produced the original written contract, and evidence of a contemporaneous oral agreement, a subsequent written modification, a subsequent oral modification, a subsequent oral modification of the written modification, an executed oral modification, an offer of compromise and the final contract with the new plumber. From the midst of this jungle of conflicting evidence it would have been difficult for a Cardoza or a Holmes to hew a straight path to the ultimate fact. Since it was not the primary function of the trial court to make the findings, it submitted all the evidence of a contract received with this instruction that if the builder had breached its contract the defendants would be relieved of their obligation to perform,— a Hornbook principle. If there was error, it was harmless.

▮▮▮ (14.) The gist of the criticism of the 14th instruction is that there was no evidence upon which to predicate it. The instruction is a definite direction to the jury that if "after entering into the *formal* contract" the builder insisted upon a substantial change in the manner of defendants' "performance of a material portion of said contract," and "should you find that said change . . . required defendants to expend additional time and money in effecting said change. . . " then defendants are not to be held to a strict compliance. The record reveals many pages of testimony bearing directly or indirectly upon the questions of whether there was a subsequent agreement, whether there was a compliance with it, whether such compliance caused additional delay, and whether the delay, if any, was excused. Such a plethora of evidence required the instruction.

The above considerations amply demonstrate that the special interrogatories submitted and the amplifying instructions given undoubtedly facilitated the jury in the discharge of its duty. It cannot be said that appellants suffered prejudice thereby.

The judgments are affirmed.

McComb, J., and Wilson, J., concurred.