[Civ. No. 16863. Second Dist., Div. Two. Apr. 5, 1949.]

JOHN E. GERSTNER, Respondent, v. SEYMOUR
SCHEUER et al., Appellants.

124

Thomas W. Le Sage for Appellants.

David Press for Respondent.

MOORE, P. J.—Plaintiff sued to enforce a trust upon Lot 9, Harvard View Tract in the city of Pasadena, to the extent of his contribution of the purchase price. From a judgment awarding him 48/115 interest in the property, defendants appeal. The judgment is attacked upon the grounds that (1) the finding of an oral agreement on July 28, 1944, of trust in cotenancy is not supported; (2) error in including respondent's payment of $700, February 5, 1945, as a part of his trust interest; (3) error in charging appellants' share only with the trust deed lien of $5,500 executed by appellants after February 5, 1945.

THE FINDINGS

The court found that on July 28, 1944, the parties agreed to purchase Lot 9 as tenants in common for the sum of $5,750; respondent promised to contribute $2,400 of the purchase price, the balance to be paid by appellants; pursuant to such agreement, respondent on the same day gave appellants $1,700 in cash to apply on the purchase; defendants purchased the lot and paid Raoul Hetu, the owner, $5,000, executed a note to other parties in the sum of $3,500 and a trust deed securing same on Lot 9, also a note to Hetu for $750 and a trust deed securing that note, as a second lien, but appellants took title in their own names subject to the two liens. On February 5,

1945, respondent gave appellants $700 for the purpose of paying Hetu the balance due on the note of $750 and they used it for that purpose. On the last-mentioned date without the knowledge of respondent appellants paid off the $3,500 note, but contemporaneously borrowed $5,500 and to secure its payment gave a deed of trust on Lot 9 which is the only encumbrance on the title. However, plaintiff is found to be the owner of 48/115 interest which, as between the parties, is free from the $5,500 debt.

## The Evidence Supports the Finding

The evidence adopted shows that the parties had been intimate and confidential friends since 1937 when they resided in Florida. After Mrs. Gerstner deceased, December 27, 1943, appellants and Mrs. Scheuer's mother moved into respondent's home and the four occupied the household and lived as one family, "on a 50-50 basis, half and half." The Scheuers were 50 and 52 years of age; respondent was 64 when they drove to California in his automobile, arriving July 19, 1944. Appellants were hearty and hale while respondent was a sufferer from asthma. Respondent then had $3,169 in money in addition to valuable personalty. Shortly after reaching Los Angeles they commenced to search for a home. After some inquiries and negotiations they determined upon Lot 9 for which Mr. Hetu demanded $5,750 of which $2,500 should be cash. Respondent replied in the presence of appellants, "I couldn't begin to pay anything like that." Two days later the owner agreed to accept $1,500 cash as the down payment and a second mortgage for $750. At that time respondent "handed Mr. Scheuer $1,750 in the bank," left the deal in the hands of appellants as his "trusted friends" and told them the property "was to be bought for all of us . . . I was in very ill health and had intentions of going away." In order to consummate the transaction appellants procured a loan on the property in the sum of $3,500. When respondent asked about the inclusion of his name on the deed as a grantee, Mr. Scheuer replied, "We can take care of that later." All three occupied the house on August 5, 1944. Respondent purchased furnishings for it during the succeeding six months. On February 5, 1945, he gave Mr. Scheuer $700 to pay off the second mortgage. At that time he had already learned that the title to Lot 9 was vested in appellants' names only. Although he asked Mr. Scheuer a dozen times between July 28, 1944, and February 19, 1945, whether his name was "in the title"

Scheuer's uniform reply was that "the papers had not come back." At no time was respondent informed that he had no interest in the home. On his departure for Nevada, February 19, 1945, on account of his health, Mrs. Scheuer stated that she would take care of his jewelry for his old age. At about the same time respondent executed a will in favor of appellants as his "good friends."

He returned to Pasadena June 29, 1946. There was no dispute of the evidence that during his absence and without his knowledge appellants had executed a first trust deed on the property to secure their promissory note in the sum of $5,500 which they used to discharge the $3,500 lien placed against the property at the time of the purchase.

### THE EVIDENCE WAS UNAMBIGUOUS

■ Appellants contend that an oral agreement of trust in cotenancy is not supported by clear, convincing and unambiguous evidence. The court made no such finding but did determine that "plaintiff and defendants entered into an oral agreement wherein and whereby they agreed to purchase as tenants in common" the property in question. The evidence is clear, convincing and unambiguous. It was neither surmise nor conjecture but on the contrary it supplied satisfactory proof of respondent's payment to appellants of the $2,400 to be applied and which was applied on the purchase of Lot 9. The testimony of respondent is ample and convincing evidence that the $2,400 was given to make the particular purchase and sustains the finding. (*Viner* v. *Untrecht,* 26 Cal. 2d 261, 267 [158 P.2d 3]; *Beeler* v. *American Trust Co.,* 24 Cal.2d 1, 7 [147 P.2d 583]; *Tobola* v. *Wholey,* 75 Cal.App. 2d 351, 355 [170 P.2d 952].) ■ The credibility of the witnesses as well as the clarity and sufficiency of the evidence are matters within the exclusive province of the trial court (*ibidem*) and the determination thereof upon substantial evidence will not be upset on review. (*Beeler* v. *American Trust Co., supra*; *Andrade* v. *Newhouse,* 54 Cal.App.2d 339, 343 [128 P.2d 927].)

### A RESULTING TRUST

■ But the judgment must be upheld upon another principle. While the finding is that the parties entered into an oral agreement in July, 1944, for the purchase of Lot 9 as tenants in common whereby respondent "agreed to contribute" $2,400 to the purchase price he is not dependent

upon the terms of an express trust arising out of such parol agreement but rather upon the resulting trust. When a person delivers money to another who uses it to acquire real property, "a trust is presumed to result in favor of the person by or for whom such payment is made." (Civ. Code, § 853; *Mazzera* v. *Wolf*, 30 Cal.2d 531, 537 [183 P.2d 649].) Neither a written agreement for the use to which the money paid was to be applied nor the fraudulent act of the recipient of the money is essential to a resulting trust. It arises by virtue of section 853, *supra*, in favor of him who furnished the money. (*Bradley* v. *Duty*, 73 Cal.App.2d 522, 526 [166 P.2d 914].) Not only did appellants fail to discern that they are resulting trustees by virtue of accepting and using respondent's money but they now prolong their contentions by asserting that the court erred in decreeing an oral agreement of trust "made after actual transfer of the property." Such was not the meaning of the judgment. The rights of respondent determined by the trial court's decision stem from the findings that his $1,700 and his $700 were delivered to appellants to apply to the purchase of Lot 9. Respondent's interest in the property arose the moment his money was paid to the vendor and does not in any respect arise from any "agreement" made after the purchase.

### THE $700 PART OF THE PURCHASE PRICE

It is contended that the court "erred in including Gerstner's payment of $700 on the second mortgage as a part of his alleged trust interest." The finding is that the parties agreed to make the purchase as tenants in common and that respondent "agreed to contribute to the purchase price . . . $2400." The proof was that he then and there paid $1,700 to appellants and told the vendor he "would see that the second mortgage was paid off" as soon as he sold his Miami property. He made the payment on February 5, 1946, prior to which day appellants had not asserted ownership to his exclusion.

Finally, appellants contend that the finding that respondent's interest in Lot 9 is free and clear of the $5,500 indebtedness which appellants secured by a new deed of trust on the home after their acquisition thereof is void because there was no allegation in the complaint with respect to such lien. It is true that no mention of the $5,500 note given by appellants is to be found in respondent's pleading. But the evidence of the subsistence of the trust deed securing that

sum was received without objection; no motion was made to strike it; and the trial continued to argument and decision on the theory that such trust deed was an issue in the case. Moreover, no objection appears to have been made to the findings in any respect and at the argument on the motion for a new trial, the transcript of the proceeding discloses that not a word was said with respect to an error in exempting respondent's interest in the property from the obligation to pay the $5,500. Therefore, despite respondent's failure to present the trust deed as an issue, since the court and counsel had it clearly in mind the decision upon the subject, in the absence of error, is final. ■ Where the parties at the trial treat an issue as though it had been presented by the pleadings and the judgment adjudicates that issue, it is not a prejudicial error that the complaint wholly omits an allegation thereof. (*Drulinger* v. *Erskine,* 71 Cal.App.2d 492, 497 [163 P.2d 48].) If appellants deemed themselves aggrieved by the finding they were in the first place obliged to criticise the findings. Failing there, they should have presented the matter on their motion for a new trial. (*Nix* v. *Heald,* 90 Cal.App.2d 723 [203 P.2d 847].) The trial court is entitled to an opportunity to correct its errors and to eradicate their harmful results, if any.

No injustice was done appellants by the judgment's subjecting their interest only to the $5,500 trust deed. They acquired their share in the property at the time of the purchase by procuring a loan in the sum of $3,500 which with $1,500 of respondent's $1,700 constituted the down payment of $5,000. Respondent paid off the second mortgage. This series of events placed appellants in possession of the property without having invested a dime in it and in addition they have $200 of respondent's initial advance of $1,700 and the $2,000 they retained out of the $5,500 obtained when they discharged the $3,500 lien.

Judgment affirmed.

McComb, J., and Wilson, J., concurred.