[Civ. No. 19508.   First Dist., Div. Three.   Dec. 13, 1961.]

A. ALFRED ZIMMERMAN et al., Plaintiffs and Respondents, v. OWEN H. BOUGHTON et al., Defendants and Appellants.

Breed, Robinson & Stewart and Wells, Murphey & Coffee for Defendants and Appellants.

Hardin, Fletcher, Cook & Hayes, John C. Loper and Cyril Viadro for Plaintiffs and Respondents.

SALSMAN, J.—Plaintiffs brought this action for damages based on alleged fraudulent misrepresentations made by defendants Flood and Garoutte in the course of the sale of certain property owned by defendants Boughton. Plaintiffs also sought exemplary damages. Defendants Boughton filed a cross-complaint against defendant Flood, and also against a Mr. and Mrs. Champion, who were the former owners of the property. This action was subsequently dismissed and is not involved in this appeal.

After a jury trial, a verdict was rendered against all defendants in the amount of $2,250 for compensatory damages. Exemplary damages in the sum of $4,875 were assessed against the defendants Flood and Garoutte, and defendants appeal.

Liability of the Boughtons depends, under the laws of agency, on the liability of defendants Flood and Garoutte. They are liable if their agent, Flood, is liable. Any references

to "defendants" herein will refer only to Flood and Garoutte unless the contrary is indicated.

Plaintiffs were seeking to purchase a house; they saw Flood's advertisement of a house for sale and this brought them to his real estate office. Mrs. Zimmerman first talked to defendant Garoutte, a real estate salesman working in the office of the defendant Flood. Garoutte took Mrs. Zimmerman to see the property involved in this action.

This house can be described generally as a duplex. There is an apartment downstairs, and one upstairs that can be reached only by an outside stairway. The upstairs apartment is completely separate from the downstairs one. The former is composed of a kitchen, bedroom, bathroom, and another small room.

The upstairs of this house had originally been an attic. It had been converted into living quarters in 1939. The ceilings in the upstairs apartment, formerly the attic portion of the house, were lower than the statutory minimum of 8 feet as now required by section 16057 of the Health and Safety Code.

Mrs. Zimmerman was interested in this property, as she and her husband had been looking for income property. Defendant Garoutte stated to her as they viewed the property that the upstairs apartment had been rented and could then be rented. Thereafter, they picked up Mr. Zimmerman and took him to see the property. Defendant Garoutte again stated that the property was rentable, and there was some discussion regarding the rental the upstairs apartment would bring. Mr. Zimmerman, who is 5 feet 7 inches tall, was able to reach up and touch the ceiling. In response to a question, defendant Garoutte assured him there was no problem because of the height of the ceiling.

Defendant Garoutte returned to his office to check on some questions the Zimmermans had asked him, including the rentability of the upstairs apartment, and returned later in the day. He said that he had checked, and that the upstairs apartment would bring from $55 to $65 a month rent.

Later, the plaintiffs signed papers in the real estate office of the defendant Flood, and it was at this time that they met Flood personally for the first time. Mrs. Zimmerman asked Flood if the property was rentable and a good purchase. He assured her that "It was a fine thing and it could be used as income property." The transaction was thereupon closed, and the Zimmermans moved into the property December 27, 1956.

On or about January 30, 1957, the Zimmermans received a letter from the Oakland Building Department pointing out several alleged violations of the Housing Act. Specifically, the letter noted that one room was not of sufficient square footage to be used as a bedroom, and also that the ceilings were too low to comply with the building regulations. Upon receipt of this letter Mrs. Zimmerman called the building inspector, discussed the noncompliance of the upstairs apartment, and apparently registered some dismay at its lack of compliance.

After Mrs. Zimmerman had received the letter from the City of Oakland, she and a friend went to see Flood at his office. She told him that she had come to rent her apartment and he said there was a woman in his office who handled the rentals and that she would take care of it. Mrs. Zimmerman inquired as to the effect the low ceilings would have on the rentability of the apartment, and Flood replied that it would have no effect and assured her not to worry about it. Flood indicated to Mrs. Zimmerman that she need not be concerned about the height of the ceiling, but he, Flood, "would not borrow trouble and call the City of Oakland about it."

Later, there were negotiations between the parties and their counsel relative to a rescission of the transaction, but these ended in failure when the defendants Flood and Garoutte refused to remit their commission. There was testimony that, in a discussion with plaintiffs' counsel, the defendant Flood stated that both he and Garoutte knew that the house did not comply with statutory provisions. Flood denied this, and also stated that both he and Garoutte had been careful to tell plaintiffs that the upstairs apartment did not comply with these requirements.

The principal contention of the appellants is that the evidence is insufficient to support the award of compensatory or exemplary damages against either of them.

■ We here refer to a long familiar rule: "In reviewing the evidence on such an appeal all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible." (*Crawford* v. *Southern Pacific Co.*, 3 Cal.2d 427 at p. 429 [45 P.2d 183].)

■ The appellants first urge that there was no violation of the Housing Act. They correctly point out that this house was built in 1908; that the Housing Act was not enacted until 1923, and that it is not retroactive. (*Snyder* v. *Hollingbery,*

141 Cal.App.2d 520 [297 P.2d 485].) However, section 15154, subdivision (a) of the Health and Safety Code, based upon section 4 of the Housing Act of 1923, provides as follows: "In any structural addition or any alteration, repair, installation, or change in, including use or occupancy, or reconstruction of, any building, such new work shall meet all the requirements of this part."

The conversion of the attic of this house into living quarters in 1939, many years after the enactment of the Housing Act, is quite obviously a "change in use or occupancy of such building," within the meaning of the statute, and hence compliance with the statute is required. (*Barry* v. *Contractors State License Board*, 85 Cal.App.2d 600 at p. 607 [193 P.2d 979].)

The plaintiffs' action is based on fraud. There was evidence that Flood knew the premises did not comply with statutory requirements and could not legally be rented.

As to Garoutte, he admitted on the stand that when he looked at the house with the Zimmermans before the sale, he saw that the ceilings in the upper apartment were "lower than standard." It is conceded that thereafter Garoutte discussed the rentability of the premises with Flood at the Zimmermans' request. Thus the jury could infer, in view of the established relationship and situation of Flood and Garoutte, that Flood's knowledge of the statutory violations became that of Garoutte. This question also, that is, the knowledge of Flood and Garoutte concerning the rentability of these premises, was before the trial judge when the motion for a new trial was considered. He, too, heard the evidence, and observed the parties as they offered their testimony to the jury. He was not disposed to disturb the implied finding that both Garoutte and Flood knew these premises could not legally be rented. The respondents sold the house at a loss prior to the filing of this action. The award of compensatory damages therefore finds clear support in the evidence, and we find no reason to disagree with the jury or the trial judge on this point.

It is next contended that the award of exemplary damages is not supported by the evidence.

Exemplary damages are provided for by section 3294 of the Civil Code. That section reads as follows: "In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, express or implied, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant."

While keeping in mind the implied finding of the jury, that both Flood and Garoutte had knowledge that these premises could not legally be rented, other facts shown by the evidence should here be noted. Both of the plaintiffs are seriously physically handicapped persons. Mr. Zimmerman has poor vision. He is employed by the California State Department of Education, Vocational Rehabilitation Service, and was Dean of Students at the California School for the Blind at the time of this transaction. Mrs. Zimmerman has lost one leg by an amputation just 3 inches below the hip. This disability makes walking difficult for her, especially climbing stairs. At the time of the events here in question she was pregnant, and on maternity leave from her job as a medical secretary. The house here in question has three flights of stairs on the outside, one from street level to foundation level, a second set to reach the first floor porch level, and a third set to reach the upstairs apartment. Mrs. Zimmerman told Garoutte that she wanted a house with very few stairs, and expressed anxiety about the stairs of this house when she saw them. To this expression of concern, Garoutte replied: "In view of what you have been telling me, that you would be interested in income, I think I would possibly consider the fact that the upstairs is rented and could be rented."

The statute provides for exemplary damages in cases of oppression, fraud, or malice, express or implied. ▪▪▪ Where the facts warrant it, as they do in this case, the granting or withholding of exemplary damages is wholly within the discretion of the jury. (*Sullivan* v. *Matt*, 130 Cal.App.2d 134 [278 P.2d 499].) ▪▪▪ It is the province of the jury, and of the trial court on motion for a new trial, to say whether exemplary damages shall be awarded, and the presumptions are in favor of the correctness of the verdict, and the judgment. (*Lawson* v. *Town & Country Shops, Inc.*, 159 Cal.App. 2d 196, 204 [323 P.2d 843].)

▪▪▪ From our review of the whole case we find that the award of compensatory and exemplary damages against both defendants Flood and Garoutte has ample support in the evidence, and we therefore affirm the judgment.

Draper, P. J., and Devine, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 7, 1962.