[Civ. No. 21480.   First Dist., Div. Two.   Mar. 3, 1965.]

REGINALD FRANK BATE et al., Plaintiffs and Respondents, v. AGNES MARSTELLER et al., Defendants and Appellants.

608

Harold D. Cutler, Park & Shenk and Joseph L. Fink for Defendants and Appellants.

Dodge, Reyes, Brorby, Kahn & Driscoll and Robert P. Brorby for Plaintiffs and Respondents.

BRAY, J.*—In an action to recover damages for fraud in a real estate transaction and to impose a constructive trust, defendants appeal from judgment against them for $14,000 damages and the following punitive damages: against defendant Arnold S. Gridley, Sr., $9,000; against defendant Burton Graham, $6,000; against defendant Agnes Marsteller, $4,000; and against defendant Arnold A. Gridley, Jr., $1,000. In its order denying motion for new trial the court reduced the punitive damages as follows: against defendant Arnold A. Gridley, Jr., to $250; against Burton Graham, to $1,500; against Arnold S. Gridley, Sr., to $2,250; and against Agnes Marsteller, to $1,000. Plaintiffs accepted the reduction.[1] Defendants also appeal from denial of their motion for judgment notwithstanding the verdict, and from the order denying motion to set aside judgment and enter new judgment.

### QUESTIONS PRESENTED

1. Did defendants' obligations as real estate brokers to plaintiffs terminate prior to the fraud?

*Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[1]Plaintiffs filed a cross-appeal from the judgment. This cross-appeal was dismissed by Minute Order of this court on May 11, 1964. Hearing was thereafter denied by the Supreme Court.

2. Did the court err in submitting the special interrogatories?

3. Should the equitable issues have been decided prior to the submission of the legal issues?

4. Did the opinion on the prior appeal determine the best available market price for the property?

5. Did the prior appeal determine the Strombergs to be bona fide purchasers of the entire interest?

6. Did the court err in proceeding on the amended complaint?

7. Was the punitive damages instruction erroneous?

### Record

The original complaint sought damages for fraud in the sale of plaintiffs' real property. Additionally to the present defendants were Roland W. Stromberg and Marion Stromberg. On the first trial of the action judgment against plaintiffs was rendered in favor of all defendants including the Strombergs. On appeal, *Bate* v. *Marsteller* (1959) 175 Cal. App.2d 573 [346 P.2d 903], the judgment was affirmed as to the Strombergs but reversed as to all the other defendants. Before retrial plaintiffs filed a first amended complaint which for the first time alleged a cause of action for equitable relief. The Strombergs were no longer parties to the action. At the second trial the jury rendered a verdict against defendants for $14,000 damages and punitive damages as hereinbefore set forth, which punitive damages were reduced by the court on motion for new trial to a total of $5,000 as above set forth. The court found that the equitable cause of action was barred by the statute of limitations and entered judgment for defendants thereon. It also denied a motion for judgment notwithstanding the verdict and a motion to set aside judgment and enter a new judgment.

### The Evidence

Defendant Arnold S. Gridley, Sr. is a licensed real estate broker doing business as Gridley Realty Co. The other defendants were servants, agents and employees of said Gridley Realty Co.[2]

In this action the facts are as follows:

Prior to February 3, 1956, plaintiffs were the owners of an encumbered apartment house located in San Francisco.

---

[2] Defendants will be referred to collectively as "brokers."

In the spring of 1955 plaintiffs authorized Gridley Realty Co. to secure a purchaser for the property. The property was withdrawn from the market for six weeks during the summer of 1955. The realty company was then reauthorized to find a buyer for the property.

The brokers were authorized to ask a selling price of $50,000 or $52,500. Shortly before November 4, 1955, Mr. and Mrs. Stromberg were told by defendant Graham that the property was listed for $37,000 and that the property could be purchased at this price. Defendants did not try to get any better price from the Strombergs. There is testimony that plaintiffs were not made aware of these facts.

A uniform agreement of sale was executed by the Strombergs on November 4, 1955, wherein they offered to purchase plaintiffs' property for $37,000. Defendant Graham was given a deposit of $500 on the sale price by the Strombergs. There is testimony that the defendant Graham represented the Strombergs in this transaction with the knowledge and consent of defendant Gridley, Sr.

The sale agreement was presented to plaintiffs on November 7, 1955, by defendants Marsteller and Gridley, Sr. When plaintiffs objected to the low purchase price of $37,000 they were told by defendants that it was the highest price obtainable. In reliance upon this representation by defendants, plaintiffs signed the sale agreement. Also, on November 7, 1955, the Strombergs executed a letter agreement whereby, as additional consideration, plaintiffs were to be permitted to remain rent free in one of the apartments until November 30, 1956; the rental value of this apartment was $100 per month.

The sale agreement required the Strombergs to increase their $500 deposit to 10 per cent of the sale price upon acceptance of the offer by plaintiffs. The Strombergs refused to increase their deposit and on November 9, 1955, defendants themselves completed the necessary deposit by placing $3,200 of their own money in escrow. None of the above facts were disclosed to plaintiffs.

During the Christmas holidays of 1955 the Strombergs informed defendant Graham that they were dissatisfied with the transaction and were willing if necessary, to lose their $500 deposit rather than complete the purchase of plaintiffs' property; the Strombergs then requested Graham to assist them in avoiding the loss of their deposit. Shortly after this request on the part of the Strombergs defendants agreed among themselves to purchase plaintiffs' property jointly with the

Strombergs. None of the above facts were disclosed by defendants to plaintiffs.

On January 11, 1956, a formal request for a loan from Surety Savings and Loan Association for the purchase of plaintiffs' property was made by defendant Agnes Marsteller; the loan was made to Agnes Marsteller individually as purchaser. On January 13, 1956, a deed of trust to secure the above loan was made by defendant Marsteller to the title company. There is no evidence that the Strombergs ever made an application for a loan to purchase the property. These facts were not disclosed to plaintiffs.

On January 30, 1956, at the request of defendants, plaintiffs executed a grant deed to the Strombergs. The instructions show a sale to the Strombergs for $37,000 and authorized payment of a $1,500 brokers' commission. The deed and instructions were deposited in escrow by defendant Graham on behalf of the brokers as agents for plaintiffs. On the next day at the request of defendant Graham a grant deed was executed by the Strombergs conveying the property to defendant Marsteller. The buyers' instructions were signed and deposited by defendant Marsteller; they showed a purchase price of $47,500. Record title to the property was placed in the name of Marsteller. However, she held title for the benefit of defendants of a 7/8 interest in the property with the remaining 1/8 being held for the Strombergs. None of the above facts were disclosed by defendants to plaintiffs.

By February 1, 1956, 7/8 of the total funds placed in escrow had been placed there on behalf of defendants. On February 2, 1956, the escrow was closed and copies of the buyers' closing statement showing a sale price of $47,500 as well as a title policy insuring Marsteller for the amount of the above sale price was sent to Marsteller. No copies were sent to plaintiffs. As late as October 2, 1956, defendants were making misrepresentations to the plaintiffs as to the true ownership of the property. On March 9, 1960, after the reversal on appeal of the original judgment, defendants and Marion Stromberg sold the property to Stephen and Becky Gee for $70,000. Defendants received a net profit of $26,425.68.

*1. Were defendants' obligations to plaintiff terminated?*

Defendants contend that when the sale agreement signed by the Strombergs was accepted by plaintiffs, all obligations of defendants to plaintiffs ceased and that what happened thereafter would give plaintiffs no right to complain.

They rely for this contention on the following language in *McPherson* v. *Real Estate Comr.* (1958) 162 Cal.App.2d 751, 754 [329 P.2d 12]: ''While a real estate salesman owes to his client the highest degree of good faith once he has secured a binding and enforceable contract with a purchaser his services to his client have been performed. No case has been cited to us holding that under such circumstances the broker breaches any duty to the first client by then undertaking in good faith to make a second sale of the same property for the purchaser.''

Defendants would treat the transaction in the instant case as a simple situation in which the broker obtains a purchaser for the seller and then after the sale is consummated buys an interest in the property from the purchaser. However, the situation here is not that simple. At no time either before, during or after the sale did the broker perform the duty required of him as a real estate broker, namely disclose to his client the true facts concerning the sale, nor did the broker act ethically. In the first place, although plaintiffs were asking for $50,000 to $52,500 for the property, the broker told the Strombergs that it was listed for $37,000 and could be bought at this price. Defendants, although they knew better, informed plaintiffs that the $37,000 and the one year's free rental making a total sale of $38,200, was the highest price obtainable. Finally, the broker did not tell plaintiffs that the Strombergs refused to make the payment required by the contract on the acceptance of the offer, and that defendants made the payment with their own money. Nor did defendants tell plaintiffs that the Strombergs were willing to forfeit their deposit, and that in order to complete the sale, defendants were to pay for and receive a 7/8ths interest in the property; nor that the Strombergs did not make the application to the savings and loan association which supplied the money for the sale, but that it was made by defendant Marsteller; nor that title to the property was being taken not by the Strombergs but by said defendant (who was to have a 1/4th interest in the property and to hold the balance in trust for the other defendants and a 1/8th interest for the Strombergs), nor that the buyers' instructions placed in the escrow showed a purchase price of $47,500, not $37,000, and a cash deposit of $10,500.

The jury found specifically on the special interrogatories that the defendants did not in good faith reveal all the material facts surrounding the transaction and that in acquiring the property they acted in a fraudulent and mali-

cious manner. The evidence well supports these findings. Obviously, the rule in *McPherson, supra,* cannot apply in this case.

"The brokers were bound to fully disclose to appellants, their principals, any facts known to them which were material to the transaction and which might affect their principals' decision. They will not be allowed to deal in their own behalf with their principals with reference to the subject matter of the agency unless they make a full, complete, and honest disclosure of the truth of the transaction.'' (*Bate* v. *Marsteller,* 175 Cal.App.2d 573, 580 [346 P.2d 903].)

The 13 some odd cases, which defendants have cited to the court, and which are alleged by defendants to contain the proposition that the broker has finally completed his part of the transaction once the buyer is accepted by the seller, do not so hold. The cases referred to simply hold that it is at this point in the sale transaction that the broker becomes entitled to his commission. However, they do not state that any action which a broker might make after the initial acceptance by a purchaser, is incapable of being held a breach of the fiduciary duty that is owed by a broker to his principal.

Moreover, this is not a case where a broker has made a second sale of the same property for the purchaser who was originally secured by the broker for his principal. This is a case where the agent has become an undisclosed purchaser of his principals' property. And while defendants insist that the court should apply the doctrine of equitable conversion to the instant case thereby making the purchaser the equitable owner, they seem to have overlooked the likewise equitable doctrine that "[w]here the purchase money is paid by a person other than the grantee in a conveyance, the former is the real purchaser and the grantee holds the legal title in trust for him.'' (50 Cal.Jur.2d 158, § 118; *Simson* v. *Eckstein,* 22 Cal. 580, 593; *Viner* v. *Untrecht,* 26 Cal.2d 261, 269 [158 P.2d 3].)
" 'The general principle which denies the agent the right, without the knowledge and consent of the principal, to become the purchaser of property which he is employed to sell for the principal is aimed at an *indirect* or collusive sale or transfer, as well as a direct sale or transfer to the agent.' '' (*Adams* v. *Herman,* 106 Cal.App.2d 92, 99 [234 P.2d 695], quoting from 2 Am.Jur. 208, § 257; italics added.)

Defendants also rely on the Maryland case of *Hardy* v. *Davis,* 223 Md. 229 [164 A.2d 281]. This case involves the situation where the agent who is employed to sell makes a

personal loan to purchasers to enable them to complete the sale. As stated by the court in the original appeal in the case at bench: "We are here concerned not with a loan by the brokers to the purchasers to enable them to complete the transaction but with a sale to the brokers." (*Bate* v. *Marsteller, supra,* at p. 581.)

### 2. *Special Interrogatories.*

█ Defendants contend that the court erred in submitting to the jury three of the special interrogatories. Defendants also contend that the questions submitted to the jury, including the three now objected to, were not made or intended by the court to be special interrogatories and hence, the rule that objections to the form of the interrogatories cannot be made on appeal, where no objection to their form was made prior to their submission to the jury, does not apply. (*Napa Valley Pkg. Co.* v. *San Francisco etc. Funds* (1911) 16 Cal.App. 461, 469 [118 P. 469].) *After* the jury had returned its verdict and discussion was being had concerning the equitable issues, the court said: "I have indicated that I do not intend to file or make any findings of fact. The findings of fact were made by the jury. The interrogatories were only to assist the Court in determining the basis of the verdict of the jury, so there would be no question in the Court's mind."

Defendants state that because of this statement and their understanding that special interrogatories are intended to and do result in special verdicts which control the general verdict, they did not regard the questions as being special interrogatories requiring prompt objection. As the questions were each denominated "Interrogatory No. ——" it is difficult to understand how defendants could be misled into believing that they did not have to object to their form no matter what defendants thought their purpose might be.[3] Defendants' understanding of the effect of the special interrogatory controlling the general verdict is not quite correct. █ Although section 625 of the Code of Civil Procedure states that a special verdict where inconsistent with a general verdict will control the latter, it has long been held that "A special finding is inconsistent with the general verdict only when, as a matter of law, the special finding when taken by itself would authorize

---

[3]In submitting the interrogatories to the jury the court stated: "It is the desire of the Court that all matters and issues may be properly determined in this trial. To this end the Court is submitting to you certain interrogatories or questions which you are instructed to answer, and which will be put to you on a form for a special verdict."

a judgment different from that which the general verdict will permit." (*Law* v. *Northern Assurance Co.* (1913) 165 Cal. 394, 407 [132 P. 590].) ■ Furthermore, no presumption is to be indulged in favor of answers to the special interrogatory and every reasonable intendment in favor of the general verdict should be favored by the court (*supra* at p. 406). ■ The purpose of the special verdict which is provided in section 625 of the Code of Civil Procedure is ". . . primarily and principally for the purpose of determining whether the general verdict is or is not against law." (*Plyer* v. *Pacific etc. Cement Co.,* 152 Cal. 125, 134-135 [92 P. 56].) There was nothing in the court's statement that reasonably could have misled defendants or that was erroneous.

We will proceed to consider defendants' contention that certain interrogatories should not have been submitted at all. ■ Interrogatory No. 7 reads: "Did the defendants herein complete their services as agents and fiduciaries when they brought the buyer and seller together and secured a binding enforceable contract dated November 7, 1955?" Defendants contend that as the interrogatory was worded, the facts were clearly undisputed, and that where the facts surrounding an agency situation are undisputed, the question imposed is one of law and is to be determined by the court and not the jury. In making their contention, defendants seem to forget that the main reason for the trial court's submitting the interrogatories to the jury was so that the court could be sure that the basis of the general verdict was not against the law. If the answers to the other interrogatories given the jury had shown that the jury believed that defendants had made a full and fair disclosure of all of the material facts of the transaction to plaintiffs, but nonetheless, still felt defendants' fiduciary relationship extended past November 7, 1955, this would have amounted to findings so inconsistent with the general verdict that the trial court would have been compelled to set the general verdict aside (*Law* v. *Northern Assur. Co., supra,* at p. 407).

As to the court's own determination on the matter, it must be presumed that any pure question of law that existed as to the agency relationship was determined and impliedly held by the court to exist in favor of plaintiffs when it entered its judgment against defendants (see *Nix* v. *Heald,* 90 Cal.App. 2d 723, 730 [203 P.2d 847]).

■ Interrogatory No. 8 reads: "Did the defendants, when they acquired an interest in the property, act in any way

616

knowingly, fraudulently, deceitfully, or maliciously?'' Defendants argue that the above interrogatory assumes as a matter of law that defendant brokers did not complete their services as agents and fiduciaries when they brought the buyer and seller together and secured a binding enforceable contract dated November 7, 1955. Defendants' contentions in this respect could be considered almost inconsistent with their contentions as to interrogatory No. 7. There, they complain that the trial judge did not decide as a matter of law whether or not an agency relationship existed. Here, they allege that he did so and that such decision was in error. In any case, however, defendants' contentions are without merit. That an agent's fiduciary duties do not necessarily terminate when a contract has been signed by purchasers secured by an agent has already been discussed. Defendants do not and cannot contend that any finding as to fraud or malice in the instant case was not for the trier of fact. Therefore, the only valid objection that defendants might have as to the interrogatory is one that goes to its form and as noted previously, this type of objection cannot be raised for the first time on appeal.

Interrogatory No. 10 reads: ''When the property was sold by the defendants and the Strombergs to the Gees, did the defendants realize a profit therefrom which was in any way a secret profit? . . . If your answer is in the affirmative, what was the amount of the secret profit?'' To the first part of the question the jury answered ''Yes'' and to the second part ''$14,000.''

Defendants' objection to this question is twofold. First, the contention hereinbefore discussed that the agency transaction terminated on November 7, 1955, when the sale agreement was executed, and secondly, that this question related solely to the cause of action in equity which was barred by the statute of limitations, and should not have been asked because they claim damages for secret profits could not be recovered in the legal action.

An agent is not entitled to make any secret profit out of the subject of his agency. (*Savage* v. *Mayer* (1949) 33 Cal. 2d 548, 551 [203 P.2d 9].) ''All benefits and advantages acquired by the agent as an outgrowth of the agency, exclusive of the agent's agreed compensation are deemed to have been acquired for the benefit of the principal, and the principal is entitled to recover such benefits in an appropriate action. . . . [T]he principal's right to recover does not depend upon any deceit of the agent, but is based upon the duties incident to the agency relationship and upon the fact that all profits re

sulting from that relationship belong to the principal. Thus section 3343 of the Civil Code, which provides the measure of damages in a suit based upon fraud in the sale or exchange of property, does not operate to limit a principal's recovery to those damages even though the profits may have been acquired through fraudulent representations to him." (*Savage* v. *Mayer, supra,* at p. 551; accord *Rodes* v. *Shannon* (1963) 222 Cal.App.2d 721, 725 [35 Cal.Rptr. 339].) ▇ Thus there can be a full recovery of any secret profits in an action for damages for fraud. Therefore, as the matter of secret profits was properly before the jury the giving of special interrogatory No. 10 could not and did not result in any prejudice to defendants.

The court did not err in submitting the interrogatories.

### 3. Order of Trial.

Defendants contend that the trial court abused its discretion in trying the legal issues before deciding the equitable issues. Basically they contend that the court in its instructions and interrogatories did not satisfactorily limit the issues that were before the jury.

▇ It has been held that where a case contains both questions of law and equity it is the better practice that the trial court determine the equitable issues before submitting the legal ones to the jury. (*Alton* v. *Rogers,* 127 Cal.App.2d 667, 676 [274 P.2d 487], and citations therein.) However, this goes to the order of proof and is not jurisdictional. (*Id.*) The trial court has power over the order of proof. (*Id.*) ▇ No prejudice results when the trial court does not make its findings of fact and conclusions of law on the equitable issues until after the jury has brought in its verdict on the legal issue, where the trial judge has by way of instructions taken from the jury all equitable issues which the jury is not entitled to consider. (*Alton* v. *Rogers, supra,* pp. 676-677.)

Defendants' contention that the court did not take from the jury all equitable issues is based upon their claim, as above mentioned, that in submitting interrogatory No. 10 the court was submitting an equitable issue, namely the issue of secret profits. As we have hereinbefore pointed, this is a legal issue and hence properly submitted. The court did not abuse its discretion in trying the equitable issues after the trial of the legal issues.

### 4. Effect of the prior appeal.

In its opinion the reviewing court reversed the judgment

of the then trial court in the following language: "Since the trial court's conclusion that the respondent brokers were not liable to appellants in any amount was based on findings unsupported by any substantial evidence, the judgment is reversed as to respondents Agnes Marsteller, Arnold S. Gridley, Sr., dba Gridley Realty Company, Barton Graham, and Arnold S. Gridley, Jr." (175 Cal.App.2d 573, 584.)

Defendants contend that because in that opinion the court stated "The trial court did not err in finding that $37,000 was the best available market price and the highest price obtainable for the property" (p. 583), that the reversal was a qualified one and that the fair market value of the profit could not be an issue at the retrial. The trial judge on this trial indicated that he might not have permitted it to be an issue were it not that he deemed it made so in the pretrial conference order after reversal of judgment. However, whether made an issue in that order or not, the unqualified reversal ordered on the appeal left the issue open for determination.

The statement by this court in its opinion upon the former appeal that the trial court did not err in finding that $37,000 was the best available market price could only refer to evidence then before the court. (*Weightman* v. *Hadley* (1956) 138 Cal.App.2d 831, 835 [292 P.2d 909].) "It is the general rule that an unqualified reversal remands the case for a new trial and sets at large for readjudication all issues involved in the case. [Citations.]" (*People* ex rel. *Dept. of Public Works* v. *Lagiss,* 223 Cal.App.2d 23, 44 [35 Cal.Rptr. 554].) " 'It is settled beyond controversy that a decision of this court upon appeal, as to a question of fact, does not become the law of the case.' " (*Weightman* v. *Hadley,* supra, at p. 836, quoting from *Erlin* v. *National Union Fire Ins. Co.* (1936) 7 Cal.2d 547, 549 [61 P.2d 756].) "[N]or can the trial court make findings based on evidence taken at the first trial." (*People* ex rel. *Dept. of Public Works* v. *Lagiss, supra,* at p. 45.) Defendants' contention is without merit.

*5. The Strombergs.*

In the opinion on the prior appeal the reviewing court stated in effect that the Strombergs were bona fide purchasers of a ⅛ interest in the property. Defendants contend that this was a determination that the Strombergs were bona fide purchasers of the whole interest and that thereafter defendants purchased ⅞ interest from them. Hence, say defendants, the holding of the reviewing court was res judicata and the

trial court on the retrial should not have retried this issue. Defendants are in error as to the holding on appeal, as the court's holding applied only to a 1/8 interest. The whole theory of plaintiffs' case on retrial was that defendants took title to only 7/8 interest in the property while the Strombergs took a 1/8 interest. Had the court on the prior appeal concluded that the evidence showed the Strombergs to be bona fide purchasers of the entire interest, the court would not have reversed the prior judgment against defendants.

As to their contention that the prior appeal decision did not set at large for readjudication all pertinent issues, defendants in their brief "recognize that the case law is not thoroughly favorable to their position" (see 3 Witkin, Cal. Procedure p. 2382; *Rossi* v. *Caire,* 39 Cal.App. 776 [180 P. 58]; *Erlin* v. *National Union Fire Ins. Co.,* 7 Cal.2d 547 [61 P.2d 756]) and would have us declare a different rule to that expressed in the authorities. We see no reason for so doing.

### 6. *Trying the equitable issues.*

The pretrial conference order stated in effect that among the issues to be tried were those raised by the first amended complaint, and whether the cause of action set forth therein was barred by the statute of limitations. Defendants contend that the court erred in proceeding on the cause of action alleged in the amended complaint inasmuch as it found that action to be barred by the statute of limitations. The trial court was following the pretrial order. ■■■ "The pretrial conference order controls the subsequent course of the litigation and supersedes the pleadings where inconsistent with them unless modified at or before trial." (*Oliver* v. *Swiss Club Tell,* 222 Cal.App.2d 528, 541 [35 Cal.Rptr. 324].) As well as the equitable issue of trust being an issue in the case, the pretrial order reinstated the issue of damages for fraud back into the trial. "An issue expressly stated in the pre-trial record is before the court" (*Fitzsimmons* v. *Jones,* 179 Cal. App.2d 5, 10 [3 Cal.Rptr. 373]). It was on this issue of damages for fraud that the jury verdicts were awarded. As to the equitable issues, the trial court found in favor of defendants. Therefore defendants' contentions as to this point are also without merit.

### 7. *Exemplary damages.*

Defendants attack the award of exemplary damages mainly on three grounds. (1) The trial judge by way of instruction

told the jury that they should return punitive damages. (2) Punitive damages could not be properly awarded in this case. (3) The trial judge instructed the jury that if it found one of the defendants guilty of oppression or fraud, damages could be recovered against all defendants.

The instruction complained of reads as follows: "In an action for the breach of an obligation not arising from contract, where the defendants, or any of them, have been guilty of oppression or fraud, the plaintiffs, in addition to the actual damages, may recover damages for the sake of example and by way of punishing said defendants. I hereby instruct you that this is an action wherein the jury may award such damages, if you so determine."

The underlying reasoning behind defendants' arguments in this matter seem to be the belief that an award for punitive damages is hardly ever proper in a case such as this. However, such belief is unwarranted.

Exemplary damages are proper in cases involving fraud and are awarded to discourage the same by way of punishing the wrongdoer. (*Southern Cal. Disinfecting Co.* v. *Lomkin,* 183 Cal.App.2d 431, 451 [7 Cal.Rptr. 43]; *Ward* v. *Taggart,* 51 Cal.2d 736, 743 [336 P.2d 534].) "Such damages are appropriate in cases like the present one, where restitution would have little or no deterrent effect, for wrongdoers would run no risk of liability to their victims beyond that of returning what they wrongfully obtained." (*Ward* v. *Taggart, supra,* at p. 743; cf. *Simone* v. *McKee,* 142 Cal.App.2d 307, 316 [298 P.2d 667].) As the jury specifically found the presence of fraud and malice on the part of defendants when they acquired their interests in the property in question, they could properly consider the question of exemplary damages.

Defendants' objections as to the wording of the instructions are without merit. The last sentence of the objected to instruction tells the jury that they *"may"* award exemplary damages "if you so determine." This language cannot be properly interpreted in any other manner except to say that it leaves the matter entirely up to the discretion of the jury. This is where it properly belongs. (*Zimmerman* v. *Boughton,* 197 Cal.App.2d 842 [18 Cal.Rptr. 119].) Defendants' contention that the jury was instructed that it could award exemplary damages against all defendants if any was found guilty of fraud is incorrect. The words "said defendants" that are contained in the first sentence of the questioned instruction clearly refer to the phrase "where the de-

fendants, or any of them, have been guilty of oppression or fraud.'' Thus the jury was told that it might award exemplary damages against any defendant it found guilty of fraud, not that it could award damages against all defendants if only one was guilty of fraud. And in any case the error complained of, if it did exist, could not be prejudicial to defendants as the jury, in answer to special interrogatory No. 8, found all defendants guilty of fraud and malice.

It should be noted that defendants also contend that the instruction in question was in error because special interrogatory No. 8 concerned itself also with secret profits. Their contention was made because of defendants' mistaken belief that secret profits cannot be recovered against an agent in an action at law for damages for fraud. The correct rule in this matter has been discussed previously.

The court did not err in denying defendants' motions for judgment notwithstanding the verdict and to set aside judgment and enter new judgment.

Judgment and orders affirmed.

Shoemaker, P. J., and Taylor, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 28, 1965.