[Crim. No. 6580. In Bank. Feb. 2, 1960.]

THE PEOPLE, Respondent, v. CLEON MULFORD BARKER et al., Appellants.

Sherman, Wiessman & Myers, Samuel H. Sherman and Joseph A. Katz for Appellants.

Stanley Mosk, Attorney General, Elizabeth Miller and Arthur C. DeGoede, Deputy Attorneys General, for Respondent.

GIBSON, C. J.—Defendants Cleon M. Barker and his wife, Lillie Belle Barker, were charged with grand theft of personal property belonging to Dr. J. P. Gillis. They were found guilty by a jury and were granted probation on condition that they spend a period of time in the county jail and make restitution. They have appealed from the judgment and the order denying their motions for a new trial.

Dr. Gillis, who lived in Los Angeles, was the owner of a section of real property located in the vicinity of Kramer Junction, San Bernardino County, where Barker had a real estate office. In September 1956, Dr. Gillis asked Barker, with whom he had had previous dealings, for his opinion regarding an offer of $25 an acre he had received for the property, explaining that he would not have to pay a commission on the sale. Barker said that the property was worth $50 an acre and that he believed he could get that much for it, and Dr. Gillis said he would be pleased to have him do it. Early in October Barker told Dr. Gillis, in the presence of Mrs. Barker, that he had gone over the property more carefully since his previous conversation with him and had con-

cluded that it was worth $35 or $40 an acre. Dr. Gillis said, "All right, try to sell it."

Defendants on October 14 told Mr. and Mrs. M. B. Marsh, who were interested in purchasing land in the area, that Dr. Gillis, defendants' 95-year-old family physician, owned land which could be bought for $50 an acre. Barker showed the property to the Marshes, and on November 1 they offered to buy it for $45 an acre and gave defendants a deposit of $500. Mrs. Barker prepared the sales deposit receipts for the transaction. On November 3 or 4, Barker telephoned Dr. Gillis saying he had been unable to find anyone who would pay more than $25 an acre for the property, but had a buyer who would purchase it at that figure. Dr. Gillis pointed out that Barker had previously advised him not to accept an offer of $25 an acre in a transaction in which he would not have had to pay a commission. Barker replied that this was the best he could do, and Dr. Gillis then agreed to sell at $25 an acre on terms to be arranged by Barker.

A few days later, when Marsh inquired about the transaction, Mrs. Barker replied that she had been unable to contact Dr. Gillis. Defendants subsequently informed Marsh that Dr. Gillis had sold the property to his sister, a Mrs. MacDonald, in order to obtain needed cash but that she would sell to Marsh for $45 an acre, the price he had agreed to pay Dr. Gillis. The statements that Dr. Gillis had a sister named Mrs. MacDonald and that he had sold the property to her were false.

Mrs. Barker, introducing herself as Lilyan E. MacDonald, a widow, opened two escrows with a title company, one of which provided for the sale of the property by Dr. Gillis to Mrs. MacDonald for $16,000 ($25 an acre) and the other provided for the sale of the property by Mrs. MacDonald to Mr. and Mrs. Marsh for $28,800 ($45 an acre). The major part of the consideration in both instances was to be paid in the form of installment notes secured by trust deeds. The escrows were closed, and Mrs. Barker, in the name of MacDonald, received $751 from the Marsh escrow and subsequent payments totaling $180. Mrs. Barker sent Marsh a letter of instructions signed "Lilyan E. MacDonald" directing him to send the installment payments to Barker. At about this time Barker suggested that since Dr. Gillis had received a small down payment, he would be willing to accept, in lieu of cash, a specified 10 acres of land owned by Dr. Gillis as his commission on the sale to MacDonald.

Neither Dr. Gillis nor Marsh knew that Mrs. MacDonald was in fact Mrs. Barker until after the transactions were completed. Later defendants were confronted by Marsh with an opinion by a handwriting expert that Mrs. Barker and Mrs. MacDonald were the same person. Defendants denied that this was true, saying that they had known Mrs. MacDonald for many years, that she was a real person, and that she lived in Michigan. They refused, however, to give Marsh the address of Mrs. MacDonald. At the trial Mrs. Barker admitted that she had used the name Lilyan E. MacDonald, which was her name by a previous marriage, in purchasing the property from Dr. Gillis and in conveying it to Mr. and Mrs. Marsh.

 Barker was under a duty to disclose to Dr. Gillis all material facts concerning the transaction that might affect his principal's decision; he was under the same obligation of undivided service and loyalty as the law imposes upon a trustee in favor of his beneficiary. (*Rattray* v. *Scudder*, 28 Cal.2d 214, 222-223 [169 P.2d 371, 164 A.L.R. 1356].) Barker's representation that $25 an acre was all he could get for the property and his failure to disclose that he had been offered $45 an acre for it was a flagrant violation of his duties. Mrs. Barker's full cooperation in the deceitful transaction was evidenced by her action in opening, under the name of Lilyan E. MacDonald, a widow, escrows for the purpose of buying the property from Dr. Gillis at the price of $25 an acre and at the same time selling it to Marsh at $45 an acre, with knowledge that Marsh had previously offered to purchase at the higher price from Dr. Gillis, and by her participation in the false representations by which defendants concealed that she was buying the property.

Section 484 of the Penal Code provides in part, "Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, . . . is guilty of theft."

Section 487 of the Penal Code provides that grand theft is committed when the money, labor or real or personal property taken is of a value exceeding $200.

The evidence supports the implied finding of the jury that defendants knowingly and designedly by false pretenses de-

frauded Dr. Gillis of personal property of a value in excess of $200.

The facts show that it was the design of defendants to defraud Dr. Gillis of the difference between the sum they intended to pay him for the land and the amount Marsh had offered for it, that in order to accomplish this purpose Barker knowingly made the false representation to Dr. Gillis that the best he, Barker, could do was to procure a buyer willing to pay $25 an acre, and that as a result of this misrepresentation defendants obtained money and notes to which Dr. Gillis was entitled. The testimony of Dr. Gillis concerning the representation made to him by Barker was corroborated by the circumstances surrounding the sale to "Lilyan E. MacDonald" and the resale to Mr. and Mrs. Marsh.[1]

Although Mrs. Barker did not personally make the false representation to Dr. Gillis, she actively participated in the transactions with knowledge of their fraudulent character. She thus aided and abetted in the commission of the crime, and was punishable as a principal under section 31 of the Penal Code.[2]

The judgment and the order denying defendants' motions for a new trial are affirmed.

Traynor, J., Schauer, J., Spence, J., McComb, J., Peters, J., and White, J., concurred.

---

[1] Section 1110 of the Penal Code reads in part: "Upon a trial for having, with an intent to cheat or defraud another designedly, by any false pretense . . . obtained from any person any labor, money, or property, whether real or personal, or valuable thing, the defendant cannot be convicted if the false pretense was expressed in language unaccompanied by a false token or writing, unless the pretense, or some note or memorandum thereof is in writing, subscribed by or in the handwriting of the defendant, or unless the pretense is proven by the testimony of two witnesses, or that of one witness and corroborating circumstances; . . ."

[2] Section 31 of the Penal Code provides in part: "All persons concerned in the commission of a crime, . . . whether they directly commit the act constituting the offense, or aid and abet in its commission, . . . are principals in any crime so committed."