[L. A. No. 28316. In Bank. June 3, 1968.]

ALPHA I. BATSON, as Executrix, etc., Plaintiff and Respondent, v. ROBERT R. STREHLOW, Defendant and Appellant.

Bear, Ruby & Grant, Nossaman, Thompson, Waters & Moss, William L. Scott and Alvin S. Kaufer for Defendant and Appellant.

Turpit, Thompson & Miller and G. Scott Miller for Plaintiff and Respondent.

SULLIVAN, J.—In this action brought by an executrix against a real estate broker and others to recover the amount of a commission paid the broker in connection with the sale of property belonging to plaintiff's decedent, defendant broker Robert R. Strehlow appeals from a judgment entered after a nonjury trial in favor of plaintiff and against him in the sum of $7,687.50, together with $1,165.70 interest, and costs.[1] The nucleus of the trial court's decision was that defendant was not acting as a real estate broker or agent at any time during the negotiation and sale of the property involved but was in fact a principal in the transaction.

James Emery Porter and his wife, Lillie, owned, as community property, residential acreage in Downey. Mr. Porter had been adjudicated an incompetent and the Union Bank in Los Angeles had been appointed guardian of his estate. On December 14, 1959, the bank, with Mrs. Porter's consent, mailed a "Listing of Real Estate for Sale" to approximately 500 real estate brokers, offering to sell the Porter property for $150,000 cash and soliciting bids. The above listing was on the letterhead of the bank's trust department, consisted of two letter-sized sheets and set forth the location and legal description of the property, the price and the conditions of sale. With the statement of price appeared the words: "SUBMIT TERMS." After a statement of the "CONDITION OF SALE" appeared the following: "Subject to the foregoing conditions and to the requirement that the purchaser shall deposit

---

[1]Plaintiff's complaint also named as defendants Gertrude E. Strehlow, wife of Robert, San Antonio Development Co., Inc., purchaser of the property, and Union Bank, formerly guardian of the estate of plaintiff's decedent. A cross-complaint was filed by defendant San Antonio Development Co., Inc. and others, against plaintiff. Judgment for costs was also entered in favor of plaintiff and against all defendants and cross-complainants except defendant Union Bank; and in favor of Union Bank and against plaintiff. The sole appellant is defendant Robert R. Strehlow. Hereafter, unless otherwise indicated, our reference to defendant will mean appellant Strehlow.

approximately 10% of the purchase price with the offer to purchase a commission of 5% will be paid, only to real estate broker submitting written offer accepted by us, said commission to be payable only upon consummation of sale to purchaser as evidenced by conveyance of the property and court approval.'' The document noted that the property was among the assets of the ''Estate of James E. Porter, Incompetent,'' and that the sale and terms thereof were ''SUBJECT TO COURT APPROVAL.''

Defendant received a copy of the above listing. On January 4, 1960, the San Antonio Development Co., Inc. (San Antonio), a corporation in which defendant and his wife owned all the outstanding shares, responded in a letter to the bank's offer, stating in pertinent part: ''We hereby offer to purchase the Porter Property under the proposal submitted to our Broker, R. R. Strehlow, . . . We will pay $153,750.00 payable $15375.00 cash herewith and the balance on demand or when sale is confirmed.'' The letter was signed ''San Antonio Development Co., Inc., by R. R. Strehlow, President.''

San Antonio's bid was the highest received. The bank thereupon prepared a formal ''Bid for the Purchase of Real Estate and Escrow Instructions,'' dated January 6, 1960, for execution by San Antonio. This document was in the form of an offer by San Antonio and addressed to the bank as Guardian of the Estate of James E. Porter, and to Mrs. Porter, as ''the wife of said incompetent.'' It restated the terms and conditions of the proposed sale as heretofore noted, set forth a legal description of the property, and incorporated detailed escrow instructions to become effective only upon the confirmation of sale by court order. ''Final consummation'' of the sale was made ''contingent upon confirmation by the Superior Court . . . and the issuance of an order of the Court authorizing this sale in accordance with the terms as set forth herein.'' The offer was signed ''San Antonio Development Co., Inc., by R. R. Strehlow, President.'' Purchaser's escrow instructions, attached to the bid, were signed in the same manner. Seller's escrow instructions, similarly attached, provided, among other things, for the payment of a commission of $7,687.50[2] to defendant Robert R. Strehlow. However, although indicating a place for execution by the bank as guardian, they were never signed.

On January 13, 1960, the bank as guardian of the incompetent filed in the guardianship proceedings its return of sale of

[2]The sum of $7,687.50 is 5 percent of the $153,750 sale price.

real property and petition for confirmation. On February 11 the court made an order confirming the sale, directing the bank to execute and deliver a deed to San Antonio and, in the language of a joint pretrial statement, authorizing "the payment of a real estate broker's commission of $7,687.50 to Robert R. Strehlow, licensed real estate broker, . . . for his services as agent in effecting the sale."

However, before the sale was consummated and on February 22, the incompetent died;[3] on March 30 plaintiff was appointed executrix of his will. ▮ [See fn. 4] Before further proceedings were had and on July 18, 1960, Mrs. Porter died; thereafter Pollyanna Phillips White was appointed special administratrix and on December 22, 1960, executrix of her will.[4] Finally, on January 26, 1961, upon plaintiff's petition, the probate court in consolidated proceedings in respect to the guardianship of Mr. Porter and the estates of both Mr. and Mrs. Porter entered its order authorizing and directing conveyance of the Porter property in accordance with the arrangements theretofore made. The sale was thereupon completed and a real estate broker's commission in the amount of $7,687.50 was paid defendant.

---

[3]Section 1555 of the Probate Code then provided in part: "The termination of the relation of guardian and ward by the death of either guardian or ward . . . shall not cause the court to lose jurisdiction of the proceeding for the purpose of settling the accounts of the guardian." It appears that all further incompetency proceedings were directed toward the settlement of the account.

[4]Defendant claims that plaintiff as Mr. Porter's executrix has actually paid only one-half the commission sought to be recovered, the other half being paid by Mrs. Porter's executrix, and the plaintiff should therefore be entitled to recover, if at all, only one-half of the commission. However, defendant must be deemed to have recognized and accepted that plaintiff seeks recovery of the commission as community property of the spouses and that their estates will share equally therein. In the joint pretrial statement signed by defendant's attorneys, it is stated: "Pollyanna Phillips White, as Executrix of the estate of Lillie Porter, dec., has been served as a defendant in this action. The estate of Lillie Porter, dec., will share in the proceeds, if any, since the property in question was community property."

Defendant did not raise either in his pretrial statement or at trial, the issue that plaintiff's recovery should be limited to one-half the amount sought. Defendant Union Bank maintained in its pretrial statement that Pollyanna P. White was a "necessary and indispensable party" but it did not expressly contend that plaintiff's recovery should be limited to one-half of the commission. Plaintiff's attorney, called as a witness on other matters, made brief reference in his testimony to the fact that there was in the estate files a stipulation that any recovery would be shared in equally by the two estates. We have concluded that if defendant did not expressly stipulate that plaintiff is entitled to the full recovery herein, certainly he must be deemed to have waived the point at this late date. (*Damiani* v. *Albert* (1957) 48 Cal.2d 15, 18 [306 P.2d 780].)

Although the property was conveyed to San Antonio, no part of the purchase price was actually provided by that corporation. As the trial court found, the entire purchase price was put up by defendant and two business associates. Shortly after completing the sale, San Antonio, without consideration conveyed the property to the Cypress Investment Company, a partnership composed of defendant and the same two associates, reserving however the mineral interests. These interests were then conveyed, one-third each to defendant and his associates on the following day.

Several months later plaintiff commenced the instant action to recover the real estate commission which had been paid defendant. The trial court found, so far as is here material, that when defendant submitted San Antonio's bid to the Union Bank, he disclosed to one Storms[5] an employee of the bank that he was president of San Antonio and "that the commission which he, Strehlow, was claiming would be thrown back into the deal"; that Storms did not disclose this information to any person; that before completion of the sale on March 31, 1961, the attorneys for plaintiff acquired knowledge that defendant was an officer of San Antonio; and that defendant did not disclose to plaintiff, the Union Bank, or to the probate court that he and his wife owned all of San Antonio's stock or that he and two associates were putting up the entire purchase price or that the partnership composed of the three of them was ultimately acquiring the property or that defendant and his two associates were each acquiring an undivided one-third interest in the oil and mineral rights. As we said earlier, the court concluded that defendant was not acting as a broker or real estate agent but was in fact a principal; and that plaintiff was entitled to a return of the commission.

■■■■ Defendant contends that he acted in the transaction not as a broker but as a "middleman" or "finder" for the sole purpose "of bringing two parties together." Thus he argues that he occupied no fiduciary relationship and could represent both seller and purchaser without making a disclosure to either. ■■■■ It is settled of course, as we have observed on other occasions, that where "'the scope of a broker's employment is limited to bringing parties together so that they may negotiate their own contract, he is a mere middleman.'" *McConnell* v. *Cowan* (1955) 44 Cal.2d 805, 810

[5]Storms was the property manager for the trust department of the bank.

[285 P.2d 261, 482]; see *Green* v. *Robertson* (1883) 64 Cal. 75, 76 [28 P. 446]; *Clark* v. *Allen* (1899) 125 Cal. 276, 278-279 [57 P. 985]; *King* v. *Reed* (1914) 24 Cal.App. 229, 235 [141 P. 41]; *Kennedy* v. *Johnson* (1930) 109 Cal.App. 662, 665-666 [293 P. 698]; *Anderson* v. *Thacher* (1946) 76 Cal. App.2d 50, 67 [172 P.2d 533]; *Hooper* v. *Mayfield* (1952) 114 Cal.App.2d 802, 805-806 [251 P.2d 330]; see generally 9 Cal. Jur.2d, pp. 237-238; 12 C.J.S. 8; 57 C.J.S. 1078.) In *King* v. *Reed, supra,* cited by us in *McConnell,* the court quoted from *Langford* v. *Issenhuth* (1912) 28 S.D. 451 [134 N.W. 889], as follows: ''A middleman is a broker whose duties are limited by his contract to finding and procuring a purchaser able, willing and ready to accept his client's terms or to effect a transaction with his client in any terms satisfactory to both, the term 'middleman' being merely descriptive of the nature of the contract of employment, he being in no fiduciary relation to his principal nor under any obligation not to receive compensation from the opposite party to the transaction, while a broker, in addition to the duties of a 'middleman,' is employed to use discretionary authority for the benefit of his employer and to act for his best interests, . . .'' (24 Cal. App. at p. 235.) ▮▮ As we pointed out in *McConnell* v. *Cowan, supra,* ''The word 'middleman' is a short term for describing a situation in which the agent has limited authority, that is, he has no power to and does not negotiate the terms on which the principals will deal, . . .'' (44 Cal.2d at p. 811.)

The distinction between one acting as a mere finder or middleman on the one hand and acting as an agent or broker on the other becomes significant in resolving the question whether he stands in a confidential relationship to one of the parties. *Hooper* v. *Mayfield, supra,* 114 Cal.App.2d 802, 805-806.) Actually the distinction frequently turns on whether the intermediary has been invested with authority or duties beyond merely bringing the parties together. These differing capacities in which a broker may act were recognized in *Williams* v. *Kinsey* (1946) 74 Cal.App.2d 583, 595-596 [169 P.2d 487], in the following language: '' [T]here was no evidence to the effect that respondent was invested with any power to bind or commit either party or that he was to do anything with regard to negotiating the terms of the exchange other than to bring the parties together. Appellant fails to recognize the distinction between a broker acting as an agent

and a broker acting as a middleman.'' (See also *Anderson* v. *Thacher, supra,* 76 Cal.App.2d 50, 67.)

In the instant case, the court made no finding that defendant acted in the capacity of a mere ''finder'' or ''middleman.'' Nor does the record before us disclose any request by defendant for a special finding (Code Civ. Proc., § 634) to the effect that he was acting in such capacity. Indeed, the record and the evidence as to the circumstances under which defendant's services were performed foreclose any determination that he may have been a mere finder. At all times during the transactions and matters leading up thereto, defendant was described or referred to as a ''broker'' and purportedly was compensated as such. The term ''finder'' or ''middleman'' was never used by any party in connection with the services for which defendant was compensated, and neither those words nor issues suggesting defendant's status as such appear in either the pleadings or the joint pretrial statement, although the latter sets out 11 ''Matters of Fact Agreed Upon'' and 24 ''Ultimate Issues of Fact and Law Remaining in Dispute.'' Defendant is consistently referred to in the pleadings in the guardianship and probate matters, and in the pleadings and joint pretrial statement in the instant case as either a ''broker'' or ''agent,'' and as we have seen, he was so solicited in the original listing mailed by the bank and so described in San Antonio's response thereto.

However, we do not adjudicate defendant's legal status by a mere labeling process. In scrutinizing the record, we assess his function in the transaction by the role he played as well as by his description in the cast; we consider what he did, as well as what he was called. Highly significant is defendant's own admitted characterization of himself as disclosed by the pleadings and the pretrial statement. Plaintiff alleged in her complaint and defendant admitted in his answer the following which ''must . . . be taken as true'' (Code Civ. Proc., § 462) : ''That in addition thereto, said Order [i.e., the Order Confirming Sale made in the guardianship proceedings] authorized the payment of a real estate broker's commission . . . to Robert R. Strehlow, licensed real estate broker, *for his services as agent in effecting the sale.*'' (Italics added.)[6] This was confirmed by the joint pretrial statement of the parties which was adopted by the trial court and made a part of its

---

[6]It also appears from a stipulation entered into in both the guardianship and probate proceedings, the bank and San Antonio acknowledged that the commission paid to defendant, who is not a party in those proceedings, was for ''his services as agent in effecting the sale.''

pretrial conference order, and consequently "controls the subsequent course of the case" (*Feykert* v. *Hardy* (1963) 213 Cal.App.2d 67, 74 [28 Cal.Rptr. 510]). Referring to the order confirming sale, the pretrial statement recites that "said Order authorized the payment of a real estate broker's commission of $7,687.50 to Robert R. Strehlow, licensed real estate broker, for his services as broker, *for his services as agent in effecting the sale*" (italics added) and that such "real estate broker's commission" was in fact paid defendant. It thus appears consistently on the record that defendant was compensated for "services" as an agent or broker "in effecting the sale" and not as a mere finder or middleman, who, as we have seen, would have been entitled to compensation had he merely brought the contracting parties together.

Additionally, we observe that under the circumstances, the compensation paid defendant could have been lawfully paid him *only* in his capacity as an agent or broker. All of the parties properly recognized throughout the entire transaction that the allowance of compensation was subject to court approval. It will be recalled that the order confirming the sale and authorizing payment of the real estate commission was made in the guardianship proceedings during the lifetime of Mr. and Mrs. Porter and that after the death of both parties an order was secured in the proceedings in their estates authorizing the completion of the sale in accordance with the earlier arrangements. This sequence of events presents no problem since, generally speaking, the transaction was governed by the same sections of the Probate Code.

Section 1534 of the Probate Code[7] which governs sales by guardians provides in substance that such sales and the proceedings for confirming them including the "allowance of commissions" must conform as nearly as possible to the provisions of the code governing sales by administrators. Section 760 of the Probate Code provides in pertinent part: "The executor or administrator may enter into a written contract

---

[7]Section 1534 which is found in chapter VIII (Sales, Mortgages, Leases and Conveyances) of division IV (Guardian and Ward) provides as follows: "Sales by guardians may be at public auction or private sale, as the guardian deems best. All proceedings concerning sales by guardians, giving notice of sale, reselling the same property, return of sale and application for confirmation thereof, notice and hearing of such application, making orders authorizing sales, rejecting or confirming sales and reports of sales, ordering and making conveyances of property sold, and allowance of commissions, must conform, as nearly as may be, to the provisions of this code concerning sales by administrators, unless otherwise specially provided in this chapter."

with any *bona fide agent or broker,* or multiple group of agents or brokers, to secure a purchaser for any real or personal property of the estate, which contract may provide for the payment of a commission out of the proceeds of the sale."[8] (Italics added.)

It is obvious that a mere finder or middleman is not a "bona fide agent or broker" and hence does not fall within the foregoing statutes providing for the allowance of commissions.[9] ▉ We think that the statutory scheme indicates clearly a legislative intent to include as persons entitled to receive commissions in probate sales only those who qualify as bona fide agents or brokers. We search in vain for any language in the statute authorizing the personal representative to contract with one who is merely a finder. Further support for this conclusion is found in section 761 which provides for a division of commissions in the instance of a sale made in open court on an increased bid to a purchaser not procured by the agent or broker holding the contract. In such event, section 761 provides, "the court shall allow a commission on the full amount for which the sale is confirmed, one-half of said commission on the original bid to be paid to the *agent* whose bid was returned to the court for confirmation and the balance of the commission on the purchase price to the *agent,* if any, who procured the purchaser to whom the sale is confirmed. If the successful bidder is not produced by a *bona fide agent,* then the agent holding the contract shall be allowed a full commission on the amount of the original bid returned by him." (Italics added.) In short, so far as probate sales are concerned, the law makes no provision for compensating "finders."

▉ Furthermore, the allegedly limited services of defendant in the instant case, which he contends categorize him as only a finder, are the very services contemplated by the Probate Code for which allowance of compensation is restricted to a "bona fide agent or broker." Section 760, as we have pointed out (see text at fn. 8, *ante*), authorizes the

---

[8]Section 760, which is found in chapter XIII (Sales), of division III (Administration of Estates of Decedents), also provides: "When said sale is confirmed to such purchaser, such contract shall be binding and valid as against the estate for an amount to be allowed by the court."

[9]We express no opinion as to whether a personal representative with court approval may otherwise enter into a special contract under which a person, either licensed or unlicensed, would act only in the limited capacity of a finder for a stipulated compensation. It is sufficient for our present purposes to note that the contract in the instant case rested on no such basis but rather on the basis of the above statutes.

personal representative to contract with a broker or agent "to *secure* a purchaser" (italics added); section 761, already discussed, provides in the event of an increased bid, for a division of the commission with the balance payable "to the agent, if any, who *procured* the purchaser to whom the sale is confirmed" (italics added); section 785 in connection with the confirmation of sales on increased bids, provides that the court shall also "fix a reasonable compensation for the services to the estate of the *agent,* if any, *producing* the successful bidder" (italics added).[10] What we point out is peculiarly characteristic of such services rendered in connection with a probate sale where "in the contemplation of the statute the sale is not regarded as 'made' unless and until it is confirmed by the court [and], strictly speaking, the purchaser cannot be regarded as 'secured' until the sale has been confirmed, . . ." (*Estate of Rule* (1944) 25 Cal.2d 1, 10 [152 P.2d 1003, 155 A.L.R. 1319], disapproved on other grounds, *Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 866, fn. 2 [44 Cal.Rptr. 767. 402 P.2d 839].) While the statutes thus provide for the allowance and payment of compensation for services rendered only in "securing" the purchaser or "procuring" the successful bidder, such allowance cannot be made unless the person rendering the services is a bona fide agent or broker. Defendant therefore places himself in a dilemma. He cannot, as he now attempts to, claim on the one hand that because he performed only limited services, he was not acting in the capacity of an agent or broker and, on the other, that he is entitled to the allowance of compensation which in probate sales can be lawfully made only to an agent or broker.

To summarize, defendant was compensated for his services as a broker or agent in effectuating the sale. The record amply supports this determination and indeed reflects that defendant himself agreed that he was compensated for purportedly acting in this capacity. Nowhere in the record is there a find-

---

[10] Section 785 provides in pertinent part: "But if a written offer . . . is made to the court by a responsible person, and the offer complies with all provisions of the law, the court shall accept such higher offer, confirm the sale to such person and fix a reasonable compensation for the services to the estate of the agent, if any, producing the successful bidder. . . . If more than one written offer . . . is made to the court by responsible persons, and if any such increased bid complies with all the provisions of the law, the court shall accept such highest increased bid, confirm the sale to the person making such increased bid, and fix a reasonable compensation for the services to the estate of the agent, if any, producing the successful bidder. . . ."

ing that defendant was acting in the capacity of a finder or middleman. Reduced to plain language, defendant's position is that we must now conclude from the record as a matter of law that he was not a broker but merely a finder or middleman. This position lacks support in the record and we reject it as totally devoid of merit.

■ We now turn to defendant's alternative contention. As we said at the start, the essence of the trial court's decision is that although defendant had been compensated for acting as a broker or agent, he was in fact acting as a principal. Defendant now argues (1) that if he *were* an agent or broker, nevertheless he had a right to deal with his principal for his own benefit providing he made a disclosure of such fact and took no unfair advantage of the principal; and (2) that prior to the consummation of the sale, he fully satisfied such duty of disclosure.

The record shows that defendant disclosed to the Union Bank that he was president of, and financially interested in, San Antonio. He also informed an employee of the bank that his commission "would be thrown back into the deal." But there were other material facts which defendant did not disclose prior to the transaction. He did *not* disclose that he and his wife were the *only* persons financially interested in San Antonio; that San Antonio was not the actual purchaser of the property; that San Antonio although represented as the purchaser was in fact furnishing no part of the consideration for the sale; that on the contrary the purchase price was being put up by defendant and his two business associates; that Cypress Investment Company, a partnership composed of the three of them, was the actual vendee of the property, except the mineral rights; and that defendant and his two associates were the actual purchasers of the mineral rights, each to acquire an undivided one-third interest thereof.

■ The law imposes on a real estate agent "the same obligation of undivided service and loyalty that it imposes on a trustee in favor of his beneficiary." *Langford* v. *Thomas* (1926) 200 Cal. 192, 196 [252 P. 602]; *Calmon* v. *Sarraille* (1904) 142 Cal. 638, 641 [76 P. 486]; *Rattray* v. *Scudder* (1946) 28 Cal.2d 214, 222-223 [169 P.2d 371, 164 A.L.R. 1356]; *Ward* v. *Taggart* (1959) 51 Cal.2d 736, 741 [336 P.2d 534]; *People* v. *Barker* (1960) 53 Cal.2d 539, 542 [2 Cal.Rptr. 467, 349 P.2d 73]; *Caro* v. *Savage* (1962) 201 Cal.App.2d 530, 541-542 [20 Cal.Rptr. 286]; Civ. Code, §§ 2322, subd. 3, 2228, 2230, 2231; Rest.2d Agency, §§ 13, 39, 387.) ■ This rela-

tionship not only imposes upon him the duty of acting in the highest good faith towards his principal but precludes the agent from obtaining any advantage over the principal in any transaction had by virtue of his agency. (*Calmon* v. *Sarraille, supra.*) "Such an agent is charged with the duty of fullest disclosure of all material facts concerning the transaction that might affect the principal's decision. [Citations.]" (*Rattray* v. *Scudder, supra,* 28 Cal.2d 214, 223; Civ. Code, § 2230;[11] Rest.2d Agency, §§ 389, 390; *Langford* v. *Thomas, supra; Baird* v. *Madsen* (1943) 57 Cal.App.2d 465, 475-476 [134 P.2d 885]; *Bate* v. *Marsteller* 1959) 175 Cal.App.2d 573, 580-581 [346 P.2d 903]; *Caro* v. *Savage, supra; Bate* v. *Marsteller* (1965) 232 Cal.App.2d 605, 613 [43 Cal.Rptr. 149].)

 When the principal questions the acts done by the agent in the course of the agency, the burden is cast upon the latter to prove that he acted with the utmost good faith toward the principal and that prior to the transaction he made a full disclosure of all the facts relating to the acts under attack. (*Victor Oil Co.* v. *Drum* (1920) 184 Cal. 226, 235-236 [193 P. 243]; *Schwarting* v. *Artel* (1940) 40 Cal. App.2d 433, 441 [105 P.2d 380]; *Bate* v. *Marsteller, supra,* 175 Cal.App.2d 573, 581.) Where an agent to sell property buys it himself, the burden is upon him to show affirmatively that he acted in the highest good faith and without concealment. (*Williams* v. *Lockwood* (1917) 175 Cal. 598, 601 [166 P. 587]; *Silver* v. *Logue* (1932) 127 Cal.App. 565, 571 [16 P.2d 183].) "The rule that an agent employed to sell the principal's property may not, without the principal's full knowledge and consent, become the purchaser is aimed at an *indirect* or collusive sale or transfer, as well as a direct sale or transfer to the agent, and extends to a sale to the agent's *spouse,* or an *indirect* or collusive sale to some other relative of the agent, or to his *partner* or employee. The rule also applies where the sale or transfer is made to a

---

[11]Civil Code section 2230 provides in pertinent part: "Neither a trustee nor any of his agents may take part in any transaction concerning the trust in which he or anyone for whom he acts as agent has an interest, present or contingent, adverse to that of his beneficiary, except as follows:

"1. When the beneficiary, having capacity to contract, with a full knowledge of the motives of the trustee, and of all other facts concerning the transaction which might affect his own decision, and without the use of any influence on the part of the trustee, permits him to do so; . . .'"

*corporation* in which the agent has a *large concealed interest,* or indirectly to the agent in the name of a third person." (Italics added.) 3 Am.Jur.2d, Agency, § 228, p. 601; see *Adams* v. *Herman* (1951) 106 Cal.App.2d 92, 99 [234 P.2d 695]; *Bate* v. *Marsteller, supra,* 232 Cal.App.2d 605, 613.)

It is manifest that defendant violated his fiduciary duties as a real estate agent by failing to fully disclose all of the material facts of the transaction and by becoming "an undisclosed purchaser of his principals' property." (*Bate* v. *Marsteller, supra,* 232 Cal.App.2d 605, 613.) The trial court was therefore warranted in concluding that he was not acting in accordance with his fiduciary duties but was in reality a principal in the transaction. He was therefore not entitled to compensation for acting for the estate when he was indeed acting for himself and plaintiff had a right to recover the commission paid.[12]

The fact that plaintiff may have received bargained-for consideration for the property, does not relieve defendant of his default or entitle him to retain the commission otherwise improperly paid and accepted. (*McConnell* v. *Cowan, supra,* 44 Cal.2d 805, 809-810; *Adams* v. *Herman, supra,* 106 Cal.App.2d 92, 98-99.) This case is a classic example of the situation which, for public policy reasons, the law seeks to avoid by placing restrictions on one acting in a dual capacity. Here defendant, although ostensibly an agent for the seller, was in fact the buyer. He thereby gained an advantage in being able to underbid others from whom the bank also solicited bids.[13] He also assured himself a strong position on the petition for confirmation, as any bidder desiring to increase the bid in open court would be required to bid at least $161,937.50 see Prob. Code, § 785), or more than $15,875 above defendant's actual outlay. To say that Mr. Potter's estate was not prejudiced thereby because it received what it asked for, disregards the realities of the situation. The estate was, in fact, foreclosed from bargaining for better terms with

[12]Defendant also claims that plaintiff is "estopped and has waived her right to complain" of nondisclosure because plaintiff was charged with knowledge that defendant was both broker and financially interested at the time the sale was consummated. However, as we point out above, plaintiff did not have knowledge of material facts relative to defendant's dual capacity which, standing alone, are sufficient to establish breach of his obligation to disclose and as to which plaintiff is not estopped to complain. (*Bate* v. *Marsteller, supra,* 175 Cal.App.2d 573, 582.)

[13]This advantage was the amount of his commission which he was able to "throw back into the deal," $7,687.50, thus permitting him to actually obtain the property for $146,062.50, $3,937.50 below the bank's stated $150,000.

defendant as it could have done, had it been aware that defendant's interest was a substantial one. The decedent's representatives also lost the advantage of bargaining prior to the return of sale with other possible bidders who might have been able to meet defendant's actual outlay. Furthermore, all the closing and incidental costs of the sale were based on the higher, exaggerated, and indeed fictitious sale price.

The judgment is affirmed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Burke, J., concurred.