[Civ. No. 56297. Second Dist., Div. Four. May 13, 1980.]

Estate of DANIEL H. LEVINTHAL, Deceased.
BERNARD M. SILBERT, as Executor, etc., Petitioner and Respondent, v.
GIL SETON, Claimant and Appellant;
HARLEIGH SANDLER COMPANY et al., Claimants and Respondents.

**COUNSEL**

Ronald G. Rutiz and James R. Jurecka for Claimant and Appellant.

No appearance for Petitioner and Respondent.

Loeb & Loeb and H. Steven Schiffres for Claimants and Respondents.

## OPINION

JEFFERSON (Bernard), J.*—Appellant Gil Seton appeals from a probate court order confirming a sale of real and personal property. The executor of the estate of Levinthal had filed a petition seeking confirmation of a private sale by the estate to purchasers secured by respondent brokers. The purchase price under the agreement with the executor was $430,000. The petition sought approval for the estate to pay a commission of 5 percent to the respondent brokers as provided in the contract with the executor.

At the hearing for confirmation of the sale, Seton appeared, stated to the court that he was a broker and that he was making an overbid in the amount of $452,000 on behalf of a corporation, Gil Seton, Inc. There being no other overbids, the court confirmed the sale of the subject property to the corporation, Gil Seton, Inc. The trial court's order from which the appeal is taken confirmed the sale to the corporation purchaser and provided for a commission of 5 percent of the private sale price, payable to respondent brokers. The order provided for no commission to be paid to Seton.

Seton contends that, under Probate Code section 785, the trial court had no discretion to deny him a reasonable commission and, that if the trial court has such a discretion, the order appealed from constitutes an abuse of discretion.

I

*The Proceedings on the Confirmation
of Sale Hearing*

The record indicates that, at the hearing on the confirmation of the sale, respondent Gil Seton announced that he was making a bid on behalf of the corporation, Gil Seton, Inc., and, upon being questioned by the court, stated that the amount of his bid was $452,000. There were no further overbids in response to the court's inquiry. The court then announced that it was confirming the sale to the overbidder, Gil Seton, Inc., for the sum of $452,000 cash.

*Assigned by the Chairperson of the Judicial Council.

The court then asked Seton whether he was involved with the corporation in view of the fact that his name was the same as that of the corporation. Seton answered "yes." The court then stated that there would be no commission on the overbid. Seton then stated that since he was representing the corporation in making the overbid, he was entitled to a commission. Upon Seton's "yes" answer to the court's renewal of its question as to whether he was interested in the corporation, the court stated that it had a discretion to *not* award a commission, and that it had been the policy of the court for 20 years to not allow a commission under the circumstances. Seton was then given an opportunity to withdraw his bid but he declined to do so.

## II

### Is a Broker Entitled to a Commission if He Has an Interest in the Overbid Purchaser at a Confirmation-of-sale Hearing?

Two Probate Code sections are involved in the issue presented on this appeal. These are Probate Code sections 761 and 785. Section 761 sets forth provisions for brokers' commissions where the sale is confirmed to an overbidder, not procured by the agent having the contract with the estate. In part pertinent to the issue before us, Probate Code section 761 provides that "[i]f the successful bidder is not produced by a bona fide agent, then the agent holding the contract shall be allowed a full commission on the amount of the original bid returned by him." Section 761 also provides that an agent "who procured the purchaser to whom the sale is confirmed" is entitled to part of the commission to be paid.

Probate Code section 785 provides, in part relevant to the issue before us, that if a proper overbid offer is made at the hearing for a confirmation of a sale—an offer which complies with all provisions of the law—"the court shall accept such higher offer, confirm the sale to such person and fix a reasonable compensation for the services to the estate of the agent, if any, producing the successful bidder, or, in its discretion, order a new sale."

It is clear that under Probate Code sections 761 and 785, to be entitled to part of a commission on a sale to an overbidder, a broker must be "a bona fide agent" who "produced" the successful bidder.

Seton advances the argument that he was a bona fide agent who produced the successful bidder—the corporation, Gil Seton, Inc., and that

Probate Code section 785 requires the payment to him of a portion of the broker's commission. Applying the formula set forth in section 785, if Seton was entitled to a commission, it would have amounted to $11,000. In contending that the trial court had no discretion in the matter, Seton relies upon the language of section 785, which provides that the court "*shall . . . fix a reasonable compensation for the services to the estate of the agent . . . producing the successful bidder.*"

The respondent brokers seek an affirmance of the probate court's order on the ground that Seton cannot be considered a "bona fide agent" who either "procured" or "secured" the corporate overbidder. Respondent brokers assert that a bona fide agent within the meaning of Probate Code section 761 requires an arm's length agency relationship between a broker and his principal, and that the record does not substantiate any showing that Seton was an arm's length broker who produced Gil Seton, Inc., a corporation, as the successful bidder.

Respondent brokers rely upon *Estate of Toy* (1977) 72 Cal.App.3d 392 [140 Cal.Rptr. 183], as dispositive of the matter before us. In the *Toy* case the successful higher bidder at a sale-confirmation hearing was a real estate broker who made the bid in his own name and was in fact the purchaser. The court confirmed the sale to the bidder but denied him any portion of the commission. The *Toy* court rejected the argument that Probate Code section 761 authorized a commission to a broker who purchased for himself. The *Toy* court held that a real estate broker, bidding for property on a sale-confirmation hearing, could not qualify under Probate Code section 761 as being an agent "who procured the purchaser to whom the sale is confirmed." The rationale of *Toy* is set forth in that court's statement that "[t]his provision [Prob. Code, § 761] contemplates compensation for services which produce a successful bid, not an automatic discount for any purchaser who happens to be a licensed broker." (*Id.* at p. 394.)

The *Toy* court recognized that a contrary view had been set forth in *Estate of Baldwin* (1973) 34 Cal.App.3d 596 [110 Cal.Rptr. 189]. In the *Baldwin* case, a broker named Lembi was doing business under the fictitious name of Skyline Realty. Lembi agreed with the coexecutrices of the Baldwin estate to purchase real property subject to court confirmation. At the sale-confirmation hearing, there were additional bids and the sale was confirmed to a higher bidder. The trial court ordered that Lembi was entitled to a portion of the commission as the prehear-

ing broker. The argument was advanced that Lembi was not entitled to recover a commission because he was acting in the dual role of purchaser-broker.

In the *Baldwin* case, it appears that Lembi had fully disclosed to the coexecutrices of the Baldwin estate that he was acting in the dual capacity as broker and purchaser and still requesting a commission. The *Baldwin* court held that Lembi was entitled to a commission even though he was acting in the dual role of purchaser-broker. The *Baldwin* court set forth the following rationale to justify its holding:

"Public policy considerations dictate that brokers be allowed to act in a dual capacity, providing they make a full disclosure. This is particularly true in connection with sales involving large, valuable pieces of property to encourage brokers to expend substantial time, money and effort to effect a sale and to acquire an interest in the property themselves. Nor is there anything ominous about brokers acting in a dual capacity in probate sales. Sufficient safeguards presently exist to protect the estate's interest. Without detailing all those legal precautions, suffice it to say that the appraisal, notice, and public sale requirements of the Probate Code are sufficient deterrents to the practice of any possible deception on the estate's legal representatives. Additionally, such sales are subject to judicial approval." (*Baldwin, supra*, 34 Cal.App.3d 596, 606.)

In rejecting the view of *Baldwin*, the *Toy* court made this observation: "The *Baldwin* court assumed that because a broker may purchase from his client if he makes a full disclosure, he may recover a commission in such a purchase. But the right to recover a commission on a probate sale is to be determined separately from the question whether a person who has been retained to act as a broker may purchase the subject property on his own account. Entitlement to receive a commission from the estate is regulated by statute. Probate Code sections 760, 761, 761.5 and 785 all speak of compensation to an agent or broker in procuring a bid from a purchaser. The statutes do not suggest an intention to give an automatic discount to any purchaser who happens to hold a real estate license." (*Toy, supra*, 72 Cal.App.3d 392, 396.)

Neither the *Toy* case nor the *Baldwin* case is fully dispositive of the case at bench. In both *Toy* and *Baldwin* the broker was an original purchaser from the estate subject to court confirmation. In *Toy*, the broker

was the high bidder in the court confirmation-sale hearing. In each of these cases there was no question but that the broker was the purchaser.

In the case at bench, however, we have a situation in which the broker may or may not have been in fact the purchaser. The proceedings below indicate that Seton as broker had an interest in the corporate purchaser-bidder, Gil Seton, Inc. We do not know, however, whether he had a 100 percent interest or just how substantial an interest he did have in the corporate purchaser.

In *Batson* v. *Strehlow* (1968) 68 Cal.2d 662 [68 Cal.Rptr. 589, 441 P.2d 101], the court had to deal with the situation in which a sale was confirmed to an ostensible purchaser defendant from the broker. The broker received the commission and the *Batson* case itself was a lawsuit brought by the estate to recover back the commission which had been paid to the broker. In that action, it was established that the purchaser was in fact solely owned by the broker and his wife. Indeed, it was revealed that immediately after the property was conveyed to the purchaser, San Antonio, it was immediately transferred by San Antonio to a partnership composed of the broker and other associates.

In *Batson*, the court made a finding that the defendant broker had not disclosed to the plaintiff estate or to the probate court that the broker and his wife owned all of San Antonio stock or that the broker and his associates were putting up the entire purchase price to secure the property.

One question presented in *Batson* was whether or not the broker in his dealings with the estate to secure the property was acting merely as a finder rather than a broker. The *Batson* court relied in part for its holding that the broker was not entitled to a commission on the provisions of section 760 of the Probate Code, which authorizes an executor-administrator to enter into a contract with a bona fide agent or broker to secure a purchaser of property of the estate and to provide for payment of a commission out of the proceeds of the sale. The *Batson* court stated: "It is obvious that a mere finder or middleman is not a 'bona fide agent or broker' and hence does not fall within the foregoing statutes providing for the allowance of commissions. We think that the statutory scheme indicates clearly a legislative intent to include as persons entitled to receive commissions in probate sales only those who qualify as bona fide agents or brokers." (*Batson, supra,* 68 Cal.2d 662, 672; fn. omitted.)

The *Batson* court then proceeded to hold that the defendant had been acting as a real estate broker and was compensated for his services as a broker or agent in effectuating the sale. But even though he was acting as a broker in effectuating the sale, the *Batson* court concluded that, under the circumstances, he was still not entitled to a commission. The basis for denying the defendant as a broker the right to receive a commission was placed by the *Batson* court upon the ground that the defendant had breached his fiduciary duties of disclosure as a real estate agent. "The law imposes on a real estate agent 'the same obligation of undivided service and loyalty that it imposes on a trustee in favor of his beneficiary.'" (*Batson, supra*, 68 Cal.2d 662, 674.)

Because the defendant had violated his fiduciary duties as a real estate agent in failing to make a full disclosure to his principal of all of the material facts of the transaction, and by becoming an undisclosed purchaser of the property of his principals, the representatives of the estate, the *Batson* court held that "[t]he trial court was therefore warranted in concluding that he was not acting in accordance with his fiduciary duties but was in reality a principal in the transaction. He was therefore not entitled to compensation for acting for the estate when he was indeed acting for himself and plaintiff had a right to recover the commission paid." (*Batson, supra*, 68 Cal.2d 662, 676; fn. omitted.)

It is significant that, in explaining the parameters of the rule that an agent employed to sell the principal's property may not, without the principal's full knowledge and consent, become the purchaser, the *Batson* court made the cogent observation that "'[t]he rule also applies where the sale or transfer is made to a *corporation* in which the agent has a *large concealed interest*, or indirectly to the agent in the name of a third person.'" (*Id.* at pp. 675-676.) (Italics in original.)

The inference we obtain from *Batson* is that a broker may become a purchaser of his principal's property which the broker is employed to sell provided the broker makes a full disclosure to the principal and thereby discharge his fiduciary obligation of undivided service and loyalty. As pointed out in *Batson*, this duty of disclosure applies in a situation in which the purchaser is a corporation in which the agent has a "large concealed interest."

But *Batson* is helpful with respect to the issue raised in the case before us only insofar as it emphasizes the agent's duty of disclosure.

*Batson* cannot be interpreted as holding that, under Probate Code section 785, the broker, to be a bona fide agent, must be a person who deals with the purchaser without having any financial interest in such purchaser. Neither Probate Code section 761 nor Probate Code section 785 mandates that if the broker and the bidding entity are separate entities, the broker is denied the right to a commission because of having some interest in the purchaser-bidder entity. As *Batson* indicates, if there is a full disclosure, there is no prohibition against a broker who purchases his principal's property for a corporation in which the broker has a *large* interest.

In the case before us there is no failure of disclosure by Seton to deprive him of the status of being a bona fide *broker* or *agent.* "An agent is one who represents another, called the principal, in dealings with third persons. Such representation is called agency." (Civ. Code, § 2295.) The fact that Seton was president of the corporation, Gil Seton, Inc., does not in and of itself foreclose him from being an agent. "[T]he same person may act as both agent and employee." (1 Witkin, Summary of Cal. Law (8th. ed. 1973) Agency and Employment, § 4, p. 646.) It is clear that, under the provisions of Probate Code section 785, the broker must *produce* the successful bidder in order to be entitled to a portion of the commission. The fact that a broker has some interest in a corporation which becomes the successful bidder does not lead to the automatic conclusion that the broker has not produced the successful bidder within the meaning of Probate Code section 785. The term "producing the successful bidder" used in Probate Code section 785 cannot logically be interpreted to limit the concept of production of a successful bidder to a bidder entity in which the broker has no interest whatever. The reasoning of *Batson* would permit a broker as agent to have an interest in a corporation produced as a purchaser as long as there is full disclosure.

In the case at bench the trial court took the view that as long as Seton had any interest in the purchasing corporate entity, he was disqualified from participating in the commission. This ruling is error. The trial court should have pursued the inquiry as to the scope of Seton's interest in the corporate entity. Unless the broker's interest in the purchasing entity is substantial, Probate Code section 785 would not constitute a bar to the broker's right to a commission. If, however, the broker has a substantial interest in the purchasing entity, there is then such a relationship between the broker and his principal—the pur-

chaser—that it cannot be said that the broker has produced the successful bidder as an entity separate and apart from the broker himself. Hence, we hold that the trial court was in error in ruling, as a matter of law, that since Seton had an interest in Gil Seton, Inc. without knowing the substantiality or insubstantiality of that interest, he was not entitled to a commission.

The order is reversed with instructions to the trial court to hold a hearing in conformity with the views expressed in this opinion to determine whether appellant Gil Seton is entitled to a portion of the commission under Probate Code section 785.

Kingsley, Acting P. J., and Burke (M. L.), J.,* concurred.

A petition for a rehearing was denied June 5, 1980.

---

*Assigned by the Chairperson of the Judicial Council.