[No. C000364. Third Dist. Dec. 4, 1987.]

STEPHENS, PARTAIN & CUNNINGHAM, Plaintiff and
Respondent, v.
ALBERT H. HOLLIS et al., Defendants and Appellants.

COUNSEL

Irvine P. Dungan for Defendants and Appellants.

Gray & Thurn and Richard L. Thurn for Plaintiff and Respondent.

**OPINION**

**SIMS, J.**—Defendants appeal from a judgment in an unlawful detainer action contending the trial court erroneously concluded plaintiff showed sufficient lawful title to the subject real property. Defendants assert, among other things, that plaintiff's title is defective because it obtained title from a trustee of a deed of trust who had purchased the property at the trustee's own foreclosure sale. We conclude the trustee's purchase was lawful and defendants' other contentions are without merit. We shall therefore affirm the judgment.

FACTS

In October 1979, defendants Albert and Mary Lee Hollis borrowed $36,000 against the equity in their home, securing the obligation by a

second deed of trust on their property. Granite Home Loans, Ltd. (Granite) acted as the loan broker for this loan. Granite was also the named trustee on the second deed of trust.[1]

In May 1981, the Hollises encountered financial problems caused by a drop in Mr. Hollis's real estate agent business. The Hollises defaulted on the note secured by the second deed and a notice of default was recorded in July 1981. A notice of sale was later published and a trustee's sale set for December 11, 1981. US Trust Deed Services was employed by Granite to conduct the sale.

At this time the owners of Granite had formed a partnership—Stephens, Partain & Cunningham (hereafter the partnership)—primarily to take advantage of tax benefits available by leasing equipment to Granite. After reviewing the amounts owing on the Hollises' property and its probable value, these officers concluded the partnership should try to obtain title to the property. Mr. Partain, president of Granite, and Mr. Cunningham, Granite's chief financial officer, were present at the trustee's sale of the Hollises' home on December 11, 1981. Also present was Mr. Hollis and a man named Peter Kwett. The Hollises had an oral agreement with Mr. Kwett that he would purchase the property and lease it back to them with an option to purchase the property in three years for $10,000 over the price Mr. Kwett paid. However, neither Granite nor the partnership knew at the time of the sale of the arrangement between Mr. Kwett and the Hollises.

US Trust Deed Services entered the opening bid, in the amount of $39,464, on behalf of the beneficiary of the foreclosed note and deed of trust. Thereafter Mr. Partain, on behalf of Granite, and Mr. Kwett alternately bid on the property each time increasing the bid by either $500 or $1,000 until Mr. Partain had bid $51,000. Mr. Kwett had bid $50,500. He did not submit a higher bid, although he had sufficient funds to do so, because in his opinion the property was not worth a higher bid. The property was sold to Granite for $51,000. This bid generated nearly $10,000 in excess funds after payment of the beneficiary's demand and foreclosure costs.

In 1984, the partnership reimbursed Granite for the purchase price and Granite deeded the property to the partnership.

After 1981, although they continued to reside in the house, the Hollises paid no rent or other money to Granite or the partnership. During this time,

---

[1] In its capacity as trustee, Granite was doing business as Rubicon Company. On this appeal, the parties acknowledge the common identities of Granite and Rubicon. We shall therefore refer to the acts of Rubicon as the acts of Granite.

Mrs. Hollis apparently made some payments, in the amount of $302 per month, on the note secured by the first deed of trust.

The partnership brought the unlawful detainer action which is the subject of this case. The Hollises defended the action asserting Granite and the partnership wrongfully obtained title.

After a court trial, the trial court concluded the trustee's sale was properly conducted. The trial court entered judgment for the partnership, awarding it possession of the premises and damages.

DISCUSSION

I

*Neither Granite nor the partnership was acting as a real estate loan broker at the time of the foreclosure sale.*

■ "It is well established that unlawful detainer actions are wholly created and strictly controlled by statute in California. The 'mode and measure of plaintiff's recovery' are limited by these statutes. The statutes prevail over inconsistent general principles of law and procedure because of the special function of unlawful detainer actions to restore immediate possession of real property. [Citations.]" (*Balassy* v. *Superior Court* (1986) 181 Cal.App.3d 1148, 1151 [226 Cal.Rptr. 817]; see *Markham* v. *Fralick* (1934) 2 Cal.2d 221, 225-227 [39 P.2d 804].)

Here, the controlling unlawful detainer statute is subdivision (b)(3) of Code of Civil Procedure section 1161a. (All further references to statutes are to the Code of Civil Procedure unless otherwise indicated.) It provides that a person who continues in possession following service of a notice to quit may be removed, "Where the property has been sold in accordance with Section 2924 of the Civil Code, under a power of sale contained in a deed of trust executed by such person, or a person under whom such person claims, and the title under the sale has been duly perfected."

■ "To establish that he is a proper plaintiff, one who has purchased property at a trustee's sale and seeks to evict the occupant in possession must show that he acquired the property at a regularly conducted sale and thereafter 'duly perfected' his title. [Citation.]" (*Vella* v. *Hudgins* (1977) 20 Cal.3d 251, 255 [142 Cal.Rptr. 414, 572 P.2d 28]; see *Cruce* v. *Stein* (1956) 146 Cal.App.2d 688, 692 [304 P.2d 118]; *Kelliher* v. *Kelliher* (1950) 101 Cal.App.2d 226, 232 [225 P.2d 554]; *Higgins* v. *Coyne* (1946) 75 Cal.App.2d 69, 73 [170 P.2d 25]; *Nineteenth Realty Co.* v. *Diggs* (1933) 134 Cal.App.

278, 288-289 [25 P.2d 522].) One who subsequently purchases property from the party who bought it at a trustee's sale may bring an action for unlawful detainer under subdivision (b)(3) of section 1161a. (*Evans* v. *Superior Court* (1977) 67 Cal.App.3d 162, 169 [136 Cal.Rptr. 596].) However, the subsequent purchaser must prove that the statutory requirements have been satisfied, i.e., that the sale was conducted in accordance with section 2924 of the Civil Code and that title under such sale was duly perfected. (*Ibid.*) "Title is duly perfected when all steps have been taken to make it perfect, i.e., to convey to the purchaser that which he has purchased, valid and good beyond all reasonable doubt. (*Hocking* v. *Title Ins. & Trust Co.* (1951), 37 Cal.2d 644, 649 [234 P.2d 625, 40 A.L.R.2d 1238]), which includes good record title (*Gwin* v. *Calegaris* (1903), 139 Cal. 384 [73 P. 851]), . . ." (*Kessler* v. *Bridge* (1958) 161 Cal.App.2d Supp. 837, 841 [327 P.2d 241].)

To the limited extent provided by subdivision (b)(3) of section 1161a, title to the property may be litigated in an unlawful detainer proceeding. (*Cheney* v. *Trauzettel* (1937) 9 Cal.2d 158, 159 [69 P.2d 832].) While an equitable attack on title is not permitted (*Cheney, supra,* 9 Cal.2d at p. 160), issues of law affecting the validity of the foreclosure sale or of title are properly litigated. (*Seidell* v. *Anglo-California Trust Co.* (1942) 55 Cal.App.2d 913, 922 [132 P.2d 12], approved in *Vella* v. *Hudgins, supra,* 20 Cal.3d at p. 256.)

The partnership has never contended that the Hollises' attacks on title could not be adjudicated in this unlawful detainer action. In this opinion, we shall therefore assume for purposes of argument, and in accordance with the assumptions of the parties, that it was proper for the trial court to determine the issues of title we discuss.

Although not entirely clear, the Hollises apparently argue the partnership has not shown title was "duly perfected."

■ The Hollises first contend the partnership, through its partners who were also officers of Granite at the time of the trustee's sale, improperly obtained title to the Hollises' home as a result of Mr. Partain's and Mr. Cunningham's breach of their fiduciary obligations *as real estate loan brokers.* Citing *Wyatt* v. *Union Mortgage Co.* (1979) 24 Cal.3d 773 [157 Cal.Rptr. 392, 598 P.2d 45], appellants assert, " 'This relationship [of loan broker] not only imposes upon him the duty of acting in the highest good faith toward his principal but precludes the agent from obtaining any ad-

vantage over the principal in any transaction had by virtue of his agency.' " (*Id.,* at p. 782.)[2]

*Wyatt* involved assertions by a borrower that the loan negotiated by the loan broker was usurious and contained unconscionable late charges and a large undisclosed balloon payment. In this context, the Supreme Court stated that a loan broker acts as the borrower's agent and has a duty to disclose fully the loan terms and conditions. (*Ibid.*) Here the Hollises make no contention that Mr. Partain or Mr. Cunningham, acting on behalf of Granite or the partnership, failed to disclose any loan terms or in any way breached their duty of full disclosure in negotiating the terms of the note and second deed of trust. The Hollises' sole complaint in this action is that, some two years after the loan was made, Mr. Partain bid for the property against Mr. Kwett at the trustee's sale. However, at that time, any agency relationship between Granite (or its officers) and the Hollises premised on the brokering of their loan had long since terminated. (Civ. Code, § 2355, subd. (a); see *People* v. *Treadwell* (1886) 69 Cal. 226, 230 [10 P. 502].) Since Granite was not acting as a loan broker for the Hollises at the foreclosure sale, *Wyatt* is not authority for a proscription against Granite's (or its officers') participation in the sale.

## II

*Substantial evidence supports the trial court's finding that Granite did no wrong in purchasing the trust property.*

■ The Hollises also contend Granite's title was not "duly perfected" because Granite could not acquire the trust property for its own profit.

Former Civil Code section 2229 (now Prob. Code, § 16004, subd. (a))[3] provided at the time of the trustee's sale as follows: "A trustee may not use or deal with the trust property for his own profit, or for any other purpose unconnected with the trust, in any manner."

The statute absolutely prohibits a true trustee from self-dealing with trust property even though the transaction may not harm the trust. (*Pacific*

---

[2] Appellants also cite *Batson* v. *Strehlow* (1968) 68 Cal.2d 662 [68 Cal.Rptr. 589, 441 P.2d 101] for the proposition that "The law imposes on a real estate agent 'the same obligation of undivided service and loyalty that it imposes on a trustee in favor of his beneficiary.' " (*Id.,* at p. 674.) However, there is no evidence that Granite ever acted as a real estate agent for the Hollises. *Batson* is inapposite.

[3] Civil Code section 2229 was repealed by Statutes 1986, chapter 820, section 7, effective September 15, 1986, operative July 1, 1987. The section is now restated in Probate Code section 16004, subdivision (a). (Stats. 1986, ch. 820, § 40; see Cal. Law Revision Com. com., Deering's Ann. Civ. Code, § 2229 (1987 pocket supp.) p. 21.)

*Vinegar etc. Works* v. *Smith* (1904) 145 Cal. 352, 365-366 [78 P. 550]; *Toedter* v. *Bradshaw* (1958) 164 Cal.App.2d 200, 208-209 [330 P.2d 688].)

In its statement of decision, the trial court concluded neither Granite nor the partnership was a trustee within the proscription of former Civil Code section 2229. The trial court was correct.

■ Although commonly called a "trustee," a trustee under a deed of trust is not the kind of trustee identified in former Civil Code section 2229. Just as a panda is not an ordinary bear, a trustee of a deed of trust is not an ordinary trustee.[4] "A trustee under a deed of trust has neither the powers nor the obligations of a strict trustee; he serves as a kind of common agent for the parties. [Citations.]" (3 Witkin, Summary of Cal. Law (8th ed. 1973) Security Transactions in Real Property, § 9, p. 1497; see 7 Witkin, *op. cit. supra*, Trusts, § 3, pp. 5368-5369.) ■ It has long been recognized that a trustee under a deed of trust is not absolutely prohibited from purchasing the trust property at the trustee's own sale. "The fact that the trustee designated in a deed of trust may have an interest in the sale of the property secured thereby does not incapacitate such trustee from acting; nor, in the absence of a showing of fraud, irregularity, or misconduct on the part of such trustee, invalidate a sale made under the terms of the deed of trust. In fact the creditor himself may rightfully act as such trustee, and may properly purchase at his own sale. (*Copsey* v. *Sacramento Bank,* 133 Cal. 659, [85 Am. St. Rep. 238, 66 Pac. 7, 204]; *Herbert Kraft Company* v. *Bryan,* 140 Cal. 73, [73 Pac. 745]; *Roberts* v. *True,* 7 Cal. App. 379, [94 Pac. 392].)" (*Kinard* v. *Kaelin* (1913) 22 Cal.App. 383, 391 [134 P. 370].)

In its statement of decision the trial court found, "There is no evidence that [Granite acted] in any manner contrary to the interests of the defendant in conducting the foreclosure sale." Substantial evidence supports this finding. At the time of the foreclosure sale, the Hollises had no right to avoid the foreclosure sale by curing the default to reinstate the loan. (See Civ. Code, §§ 2924, 2924c, subd. (b)(1); Bernhardt, Cal. Mortgage and Deed of Trust Practice, (Cont.Ed.Bar 1979) § 6.17, pp. 271-273.) Nor could Mr. Kwett's participation in the bidding be reasonably construed as an attempt by the Hollises to redeem the property by paying the full amount of the debt. (See Civ. Code, §§ 2903-2905; *Arnolds Management Corp.* v. *Eischen* (1984) 158 Cal.App.3d 575 [205 Cal.Rptr. 15].) Thus, the Hollises' only legally cognizable interest was in having the sale conducted fairly and openly, so that the highest possible price could be obtained. (See *Baron* v.

---

[4]The panda is closely related to the raccoon. Giant pandas have been described as "peculiar bears." (Gould, The Panda's Thumb (1980) p. 21.) With luck, this passage will end up as the following headnote in some legal digest: "Trustee under deed of trust held to be panda bear."

*Colonial Mortgage Service Co.* (1980) 111 Cal.App.3d 316, 322 [168 Cal.Rptr. 450].) The Hollises make no claim that the sale was not open and public. The record shows Granite's participation at the sale served to obtain a higher price than otherwise would have been obtained.

Since Granite's participation at the foreclosure sale was lawful, Granite's title was not imperfect. The partnership proved what it had to under section 1161a, subdivision (b)(3).

DISPOSITION

The judgment is affirmed.

Puglia, P. J., and Carr, J., concurred.

On December 22, 1987, the opinion was modified to read as printed above.